# PRESSER *v.* ILLINOIS.

ERROR TO THE SUPREME COURT OF THE STATE OF ILLINOIS.

Argued November 23, 24, 1885.—Decided January 4, 1886.

The doctrine that statutes, constitutional in part only, will be upheld as to what is constitutional, if it can be separated from the unconstitutional provisions, reasserted.

A State statute providing that all able-bodied male citizens of the State between eighteen and forty-five, except those exempted, shall be subject to military duty, and shall be enrolled and designated as the State militia, and prohibiting all bodies of men other than the regularly organized volunteer militia of the State and the troops of the United States from associating together as military organizations, or drilling or parading with arms in any city of the State without license from the governor, as to

these provisions is constitutional and does not infringe the laws of the United States: and it is sustained as to them, although the act contains other provisions, separable from the foregoing, which it was contended infringed upon the powers vested in the United States by the Constitution, or upon laws enacted by Congress in pursuance thereof.

The provision in the Second Amendment to the Constitution, that "the right of the people to keep and bear arms shall not be infringed," is a limitation only on the power of Congress and the national government, and not of the States.   But in view of the fact that all citizens capable of bearing arms constitute the reserved military force of the national government as well as in view of its general powers, the States cannot prohibit the people from keeping and bearing arms, so as to deprive the United States of their rightful resource for maintaining the public security.

The provision in the Fourteenth Amendment to the Constitution that "no State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States," does not prevent a State from passing such laws to regulate the privileges and and immunities of its own citizens as do not abridge their privileges and immunities as citizens of the United States.

Unless restrained by their own Constitutions, State legislatures may enact statutes to control and regulate all organizations, drilling, and parading of military bodies and associations, except those which are authorized by the militia laws of the United States.

Herman Presser, the plaintiff in error, was indicted on September 24, 1879, in the Criminal Court of Cook County, Illinois, for a violation of the following sections of Art. XI. of the Military Code of that State, Act of May 28, 1879, Laws of 1879, 192.

"§ 5. It shall not be lawful for any body of men whatever, other than the regular organized volunteer militia of this State, and the troops of the United States, to associate themselves together as a military company or organization, or to drill or parade with arms in any city, or town, of this State, without the license of the Governor thereof, which license may at any time be revoked: *And provided, further*, that students in educational institutions, where military science is a part of the course of instruction, may, with the consent of the Governor, drill and parade with arms in public, under the superintendence of their instructors, and may take part in any regimental or brigade encampment, under command of their military instructor; and while so encamped shall be governed by the provisions of this act.   They shall be entitled only to transporta-

tion and subsistence, and shall report and be subject to the commandant of such encampment: *Provided*, that nothing herein contained shall be construed so as to prevent benevolent or social organizations from wearing swords.

"§ 6. Whoever offends against the provisions of the preceding section, or belongs to, or parades with, any such unauthorized body of men with arms shall be punished by a fine not exceeding the sum of ten dollars ($10), or by imprisonment in the common jail for a term not exceeding six months, or both."

The indictment charged in substance that Presser, on September 24, 1879, in the county of Cook, in the State of Illinois, "did unlawfully belong to, and did parade and drill in the city of Chicago with an unauthorized body of men with arms, who had associated themselves together as a military company and organization, without having a license from the Governor, and not being a part of, or belonging to, 'the regular organized volunteer militia' of the State of Illinois, or the troops of the United States."

A motion to quash the indictment was overruled. Presser then pleaded not guilty, and both parties having waived a jury the case was tried by the court, which found Presser guilty and sentenced him to pay a fine of $10.

The bill of exceptions taken upon the trial set out all the evidence, from which it appeared that Presser was thirty-one years old, a citizen of the United States and of the State of Illinois, and a voter; that he belonged to a society called the Lehr und Wehr Verein, a corporation organized April 16, 1875, in due form, under chapter 32, Revised Statutes of Illinois, called the General Incorporation Laws of Illinois, "for the purpose," as expressed by its certificate of association, "of improving the mental and bodily condition of its members, so as to qualify them for the duties of citizens of a republic. Its members shall therefore obtain, in the meetings of the association, a knowledge of our laws and political economy, and shall also be instructed in military and gymnastic exercises;" that Presser, in December, 1879, marched at the head of said company, about four hundred in number, in the streets of the city

of Chicago, he riding on horseback and in command; that the company was armed with rifles and Presser with a cavalry sword; that the company had no license from the governor of Illinois to drill or parade as a part of the militia of the State, and was not a part of the regular organized militia of the State, nor a part of troops of the United States, and had no organization under the militia law of the United States. The evidence showed no other facts. Exceptions were reserved to the ruling of the court upon the motion to quash the indictment, to the finding of guilty, and to the judgment thereon. The case was taken to the Supreme Court of Illinois, where the judgment was affirmed. Thereupon Presser brought the present writ of error for a review of the judgment of affirmance.

*Mr. Allan C. Story* for plaintiff in error, argued the following Federal points.—I. The Illinois act is in conflict with Article I., section 8, subdivisions 12, 14, 15, 16 and 18 of the Constitution of the United States. *Houston* v. *Moore,* 5 Wheat. 1, 51, 68; *Gibbons* v. *Ogden,* 9 Wheat. 1, 209; *Passenger C ses,* 7 How. 283; *Railroad Co.* v. *Husen,* 95 U. S. 465; *McCulloch* v. *Maryland,* 4 Wheat. 315; *Sturges* v. *Crowninshield,* 4 Wheat. 122; *Opinions of Justices,* 14 Gray, 614; *United States* v. *Cruikshank,* 92 U. S. 542; *Martin* v. *Mott,* 12 Wheat. 19.—II. It is also in conflict with Article 1, section 18, subdivision 3, of the Constitution. *Luther* v. *Borden,* 7 How. 1; *Texas* v. *White,* 7 Wall. 700; *Green* v. *Biddle,* 8 Wheat. 1; *Poole* v. *Fleeder,* 11 Pet. 185; and cases cited above. —III. It is also in conflict with Article II. of the Amendments to the Constitution. See cases cited under Point I.— IV. It is also in conflict with Amendment XIV. to the Constitution. *Slaughter-House Cases,* 16 Wall. 36, 74; *Ward* v. *Maryland,* 12 Wall. 418, 430; *Crandall* v. *Nevada,* 6 Wall. 35, 49; *Dred Scott* v. *Sandford,* 19 How. 393, 580; *United States* v. *Cruikshank,* cited above.—V. It is also in conflict with Article I., section 9, subdivision 3 of the Constitution. *Fletcher* v. *Peck,* 6 Cranch, 87; *Cummings* v. *Missouri,* 4 Wall. 277; *Lapeyre* v. *United States,* 17 Wall. 191, 206; *Carpenter*

v. *Pennsylvania*, 17 How. 456; *Ex parte Garland*, 4 Wall. 333.

*Mr. Lyman Trumbull* also filed a supplemental brief for plaintiff in error, contending as follows:

I. The power of organizing, arming and disciplining the militia being confided by the Constitution to Congress, when Congress acts upon the subject and passes a law to carry into effect the constitutional provision, such action excludes the power of legislation by the State on the same subject. This is manifest, not only from the grant of power to Congress to organize, arm and discipline the militia, but from the restriction which the Constitution puts upon the States, limiting them simply to the appointment of the officers, and to the authority to train the militia as Congress shall prescribe. The power of each government in regard to the militia is distinctly stated in the Constitution itself. As well might the Federal government arrogate to itself the appointment of the officers of the militia as for the States to assume to organize and arm them in a different mode from that prescribed by Congress. Congress has exercised its functions, and covered, so far as it deemed expedient, the ground assigned to it by the Constitution, by providing for organizing, arming and disciplining the militia. See *Houston* v. *Moore*, 5 Wheat. 1, especially the language of the court on page 24. Counsel on the other side contend this case was overruled in *Sturges* v. *Crowninshield*, 4 Wheat. 122. That is a remarkable statement, as *Sturges* v. *Crowninshield*, was decided a year before *Houston* v. *Moore*. Moreover there is nothing in the former in conflict with the latter. The Military Code of Illinois differs from the act of Congress not only in details, but in its whole scope and object. Congress aims to arm, organize and discipline all able-bodied male citizens of the specified age. Illinois aims to prevent such arming, organizing and disciplining. Only 8000 are allowed to associate together and drill, and even those are not enrolled and organized as required by Congress.

II. The provisions for organizing, arming and disciplining the Illinois National Guard are in conflict with that clause of

the Constitution which declares that no State shall, without the consent of Congress, keep troops in time of peace. Congress has never given its assent to that organization, and it is apparent that the guard are " troops " within the sense of the Constitution. The militia acts of Congress only excepted from their operation certain military organizations then existing, of which the Illinois National Guard was not one. It consists of 8000 men, raised for five years, formed into companies and regiments, with staff officers different in number and rank from those provided for by Congress ; is divided into infantry, cavalry and artillery ; is required to drill often, to practise at target shooting and rifle practice, and is required to conform to the laws of the United States organizing the militia only in matters not provided for in the act. If these provisions do not constitute the Illinois National Guard "troops," the keeping of which in time of peace by the State is prohibited by the Constitution of the United States, I am at a loss to conceive what kind of troops it is that a State may not keep.

III. The provision of the State statute which prohibits other organizations than that of the " Illinois National Guard," from associating together as military companies, or to parade with arms, without the license of the governor, is in conflict with the act of Congress for the organization, &c., of the militia, and also violates Articles II. and XIV. of the Amendments to the Constitution. It may be admitted that Article II., securing to the people the right to keep and bear arms, by itself is a prohibition against the power of Congress, and not of the States, to interfere with that right, except when the keeping and bearing of arms is connected with some national purpose. When it is so connected, no State can pass any law abridging the right without a violation of the Second and Fourteenth Amendments.

The Fourteenth Amendment makes all persons born or naturalized in the United States, citizens of the United States, and of the State wherein they reside, and then declares that no State shall make any law which shall abridge the privileges and immunities of citizens of the United States. The citizen

of the United States has secured to him the right to keep and
bear arms as part of the militia which Congress has the right
to organize, and arm, and to drill in companies. This is a na-
tional right which the national government has the power and
which it is its duty to enforce.

This right of the people to keep and bear arms for the pur-
pose of forming a well regulated militia, like "the right of the
people peaceably to assemble for the purpose of petitioning
Congress for a redress of grievances or for anything else con-
nected with the powers or the duties of the national govern-
ment, is an attribute of national citizenship, and as such, under
the protection of, and guaranteed by the United States."
*United States* v. *Cruikshank*, 92 U. S. 542, 552.

Whether a State may not prohibit its citizens from keeping
or bearing arms for other than militia purposes is a question
which need not be considered, as the Illinois statute is aimed
against the organizing, arming and drilling of bodies of men as
militia, except they belong to the Illinois National Guard of
eight thousand.

It is contended that the Illinois act does not conflict with the
act of Congress until the militia is actually mustered into the
service of the United States. This is a mistaken view of the
Constitution and of the object and intent of the law of 1792.
The power of Congress to *organize* the militia is not limited to
a period of war, or to such time as they may be employed in
the service of the United States. It is only the power to *govern*
them that is thus limited. The clause in the Constitution au-
thorizing the President to call out the militia and put it into the
service of the United States is separate and distinct from that
which authorizes Congress to legislate for its organization, arm-
ing, and discipline. The manifest intent of the Constitution is
to provide for an organized militia in time of peace, which may
be called upon to execute the laws of the Union, and thus dis-
pense with a standing army.

The acts of 1792 and 1795, authorizing the President to use
military force to enforce the laws of the Union, suppress insur-
rections, and repel invasions, limited him to the use of the
militia for such purposes. It was not until 1807 that he had

authority to employ the land and naval forces of the United States therefor. Act of March 3, 1807, 2 Stat. 443.

The militia acts make definite provisions as to the persons to serve in the militia, the officers of that body, the times of parade and service, the returns to be made to the President, &c. It is absurd to suppose that these have no force till the militia is mustered into the service of the Union. State laws making other provisions are in conflict with it as much before as after such muster.

If it were admitted that State laws for organizing the militia are valid, except in so far as they conflict with the execution and operation of national laws on the same subject, the admission does not help the defendant in error, because it is insisted, and, as I think, shown, that the whole spirit, intent and effect of the Illinois statute is in conflict with the provisions of the act of Congress. If a State law is incompatible with the Constitution of the United States, or any law of Congress in pursuance thereof, it is invalid, whether the conflict arise in the execution and operation of the act of Congress, or in an attempt to put the State law in operation. It is enough if the State law, when sought to be put into execution and operation, conflicts with the national law on the same subject. It may be that a State law in partial execution of the military act of Congress, and conforming to its provisions, would be valid to that extent, upon the principle that power to organize all the militia implies the power to organize a part; but this principle can have no application to the Military Code of Illinois, for the reason that the organization of the Illinois National Guard, provided for by that code, does not, as has been already shown, conform to the act of Congress. It does not constitute any part of the militia upon which the President may call to enforce the laws of the United States, when resisted by combinations too powerful to be overcome by the ordinary course of judicial proceedings. Act of February 28, 1795, 1 Stat. 424; Rev. Stat. §§ 5298, 5299. It is purely a State force, sworn to serve the State in its military service, subject at all times to the orders of the governor, prohibited from leaving the State without his consent under a penalty, and so far from being part of

the militia organized in pursuance of the act of Congress, the Illinois National Guard, in its organization, arming, and the purpose for which it is organized, contravenes the spirit and intent of the national act, and if permitted to stand, it prevents the organizing, arming and disciplining all the male citizens of the State, as Congress has prescribed.

*Mr. George Hunt*, Attorney-General of Illinois, for defendant in error.

MR. JUSTICE WOODS delivered the opinion of the court. After stating the facts in the language above reported, he continued:

The position of the plaintiff in error in this court was, that the entire statute under which he was convicted was invalid and void, because its enactment was the exercise of a power by the legislature of Illinois forbidden to the States by the Constitution of the United States.

The clauses of the Constitution of the United States referred to in the assignments of error, were as follows:

Art. I., sec. 8. " The Congress shall have power . . . To raise and support armies. . . . To provide for calling forth the militia to execute the laws of the Union, suppress insurrections, and repel invasions. To provide for organizing, arming, and disciplining the militia, and for governing such part of them as may be employed in the service of the United States, reserving to the States, respectively, the appointment of the officers, and the authority of training the militia, according to the discipline prescribed by Congress. . . . To make all laws which shall be necessary and proper, for carrying into execution the foregoing powers," &c.

Art. I., sec. 10. " No State shall, without the consent of Congress, keep troops . . . in time of peace."

Art. II. of Amendments. " A well regulated militia being necessary to the security of a free State, the right of the people to keep and bear arms shall not be infringed."

The plaintiff in error also contended that the enactment of the 5th and 6th sections of Article XI. of the Military Code

was forbidden by subdivision 3 of section 9, Art. I., which declares "No bill of attainder or *ex post facto* law shall be passed," and by Art. XIV. of Amendments, which provides that "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, nor shall any State deprive any person of life, liberty, or property without due process of law."

The first contention of counsel for plaintiff in error is that the Congress of the United States having, by virtue of the provisions of Article I., section 8, above quoted, passed the act of May 8, 1792, entitled "An Act more effectually to provide for the National Defence by establishing an Uniform Militia throughout the United States," 1 Stat. 271, the act of February 28, 1795, "to provide for calling forth the militia to execute the laws of the Union, suppress insurrections, and repel invasions," 1 Stat. 424, and the act of July 22, 1861, "to authorize the Employment of Volunteers to aid in enforcing the Laws and protecting Public Property," 12 Stat. 268, and other subsequent acts, now forming "Title XVI., The Militia," of the Revised Statutes of the United States, the legislature of Illinois had no power to pass the act approved May 28, 1879, "to provide for the organization of the State militia, entitled the Military Code of Illinois," under the provisions of which (sections 5 and 6 of Article XI.) the plaintiff in error was indicted.

The argument in support of this contention is, that the power of organizing, arming, and disciplining the militia being confided by the Constitution to Congress, when it acts upon the subject, and passes a law to carry into effect the constitutional provision, such action excludes the power of legislation by the State on the same subject.

It is further argued that the whole scope and object of the Military Code of Illinois is in conflict with that of the law of Congress. It is said that the object of the act of Congress is to provide for organizing, arming, and disciplining all the able-bodied male citizens of the States, respectively, between certain ages, that they may be ready at all times to respond to the call of the nation to enforce its laws, suppress insurrection, and

repel invasion, and thereby avoid the necessity for maintaining a large standing army, with which liberty can never be safe, and that on the other hand, the effect if not object of the Illinois statute is to prevent such organizing, arming, and disciplining of the militia.

The plaintiff in error insists that the act of Congress requires absolutely all able-bodied citizens of the State between certain ages, to be enrolled in the militia; that the act of Illinois makes the enrolment dependent on the necessity for the use of troops to execute the laws and suppress insurrections, and then leaves it discretionary with the governor by proclamation to require such enrolment; that the act of Congress requires the entire enrolled militia of the State, with a few exemptions made by it and which may be made by State laws, to be formed into companies, battalions, regiments, brigades, and divisions, that every man shall be armed and supplied with ammunition, provides a system of discipline and field exercises for companies, regiments, &c., and subjects the entire militia of the State to the call of the President to enforce the laws, suppress insurrection, or repel invasion, and provides for the punishment of the militia officers and men who refuse obedience to his orders. On the other hand, it is said that the State law makes it unlawful for any of its able-bodied citizens, except eight thousand, called the Illinois National Guard, to associate themselves together as a military company, or to drill or parade with arms without the license of the governor, and declares that no military company shall leave the State with arms and equipments without his consent; that even the eight thousand men, styled the Illinois National Guard, are not enrolled or organized as required by the act of Congress, nor are they subject to the call of the President, but they constitute a military force sworn to serve in the military service of the State, to obey the orders of the governor, and not to leave the State without his consent; and that, if the State act is valid, the national act providing for organizing, arming, and disciplining the militia is of no force in the State of Illinois, for the Illinois act, so far from being in harmony with the act of Congress, is an insurmountable obstacle to its execution.

We have not found it necessary to consider or decide the question thus raised, as to the validity of the entire Military Code of Illinois, for, in our opinion, the sections under which the plaintiff in error was convicted may be valid, even if the other sections of the act were invalid. For it is a settled rule " that statutes that are constitutional in part only will be upheld so far as they are not in conflict with the Constitution, provided the allowed and prohibited parts are separable." *Packet Co.* v. *Keokuk*, 95 U. S. 80; *Penniman's Case*, 103 U. S. 714, 717; *Unity* v. *Burrage*, 103 U. S. 459. See also *Trade Mark Cases*, 100 U. S. 82.

We are of opinion that this rule is applicable in this case. The first two sections of Article I. of the Military Code provide that all able-bodied male citizens of the State between the ages of eighteen and forty-five years, except those exempted, shall be subject to military duty, and be designated the " Illinois State Militia," and declare how they shall be enrolled and under what circumstances. The residue of the Code, except the two sections on which the indictment against the plaintiff in error is based, provides for a volunteer active militia, to consist of not more than eight thousand officers and men, declares how it shall be enlisted and brigaded, and the term of service of its officers and men; provides for brigade generals and their staffs, for the organization of the requisite battalions and companies and the election of company officers; provides for inspections, parades, and encampments, arms and armories, rifle practice, and courts martial; provides for the pay of the officers and men, for medical service, regimental bands, books of instruction and maps; contains provisions for levying and collecting a military fund by taxation, and directs how it shall be expended; and appropriates $25,000 out of the treasury, in advance of the collection of the military fund, to be used for the purposes specified in the Military Code.

It is plain from this statement of the substance of the Military Code, that the two sections upon which the indictment against the plaintiff in error is based may be separated from the residue of the Code, and stand upon their own independent provisions. These sections might have been left out of the

Military Code and put in an act by themselves, and the act thus constituted, and the residue of the Military Code, would have been coherent and sensible acts. If it be conceded that the entire Military Code, except these sections, is unconstitutional and invalid, for the reasons stated by the plaintiff in error, these sections are separable, and, put in an act by themselves, could not be considered as forbidden by the clauses of the Constitution having reference to the militia, or to the clause forbidding the States, without the consent of Congress, to keep troops in time of peace. There is no such connection between the sections which prohibit any body of men, other than the organized militia of the State and the troops of the United States, from associating as a military company and drilling with arms in any city or town of the State, and the sections which provide for the enrolment and organization of the State militia, as makes it impossible to declare one, without declaring both, invalid

This view disposes of the objection to the judgment of the Supreme Court of Illinois, which judgment was in effect that the legislation on which the indictment is based is not invalid by reason of the provisions of the Constitution of the United States, which vest Congress with power to raise and support armies, and to provide for calling out, organizing, arming and disciplining the militia, and governing such part of them as may be employed in the service of the United States, and that provision which declares that "no State shall without the consent of Congress . . . keep troops . . . in time of peace."

We are next to inquire whether the 5th and 6th sections of article XI. of the Military Code are in violation of the other provisions of the Constitution of the United States relied on by the plaintiff in error. The first of these is the Second Amendment; which declares: "A well regulated militia being necessary to the security of a free State, the right of the people to keep and bear arms shall not be infringed."

We think it clear that the sections under consideration, which only forbid bodies of men to associate together as military organizations, or to drill or parade with arms in cities

and towns unless authorized by law, do not infringe the right of the people to keep and bear arms. But a conclusive answer to the contention that this amendment prohibits the legislation in question lies in the fact that the amendment is a limitation only upon the power of Congress and the National government, and not upon that of the States. It was so held by this court in the case of *United States* v. *Cruikshank*, 92 U. S. 542, 553, in which the Chief Justice, in delivering the judgment of the court, said, that the right of the people to keep and bear arms "is not a right granted by the Constitution. Neither is it in any manner dependent upon that instrument for its existence. The Second Amendment declares that it shall not be infringed, but this, as has been seen, means no more than that it shall not be infringed by Congress. This is one of the amendments that has no other effect than to restrict the powers of the National government, leaving the people to look for their protection against any violation by their fellow-citizens of the rights it recognizes to what is called in *The City of New York* v. *Miln*, 11 Pet. [102] 139, the 'powers which relate to merely municipal legislation, or what was perhaps more properly called internal police,' 'not surrendered or restrained' by the Constitution of the United States." See also *Barron* v. *Baltimore*, 7 Pet. 243; *Fox* v. *The State of Ohio*, 5 How. 410; *Twitchell* v. *Commonwealth*, 7 Wall. 321, 327; *Jackson* v. *Wood*, 2 Cowen, 819; *Commonwealth* v. *Purchase*, 2 Pick. 521; *United States* v. *Cruikshank*, 1 Woods, 308; *North Carolina* v. *Newsom*, 5 Iredell, 250; *Andrews* v. *State*, 3 Heiskell, 165; *Fife* v. *State*, 31 Ark. 455.

It is undoubtedly true that all citizens capable of bearing arms constitute the reserved military force or reserve militia of the United States as well as of the States, and, in view of this prerogative of the general government, as well as of its general powers, the States cannot, even laying the constitutional provision in question out of view, prohibit the people from keeping and bearing arms, so as to deprive the United States of their rightful resource for maintaining the public security, and disable the people from performing their duty to the general government. But, as already stated, we think

it clear that the sections under consideration do not have this effect.

The plaintiff in error next insists that the sections of the Military Code of Illinois, under which he was indicted, are an invasion of that clause of the first section of the Fourteenth Amendment to the Constitution of the United States which declares: " No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States."

It is only the privileges and immunities of citizens of the United States that the clause relied on was intended to protect. A State may pass laws to regulate the privileges and immunities of its own citizens, provided that in so doing it does not abridge their privileges and immunities as citizens of the United States. The inquiry is, therefore, pertinent, what privilege or immunity of a citizen of the United States is abridged by sections 5 and 6 of Article XI. of the Military Code of Illinois?

The plaintiff in error was not a member of the organized volunteer militia of the State of Illinois, nor did he belong to the troops of the United States or to any organization under the militia law of the United States. On the contrary, the fact that he did not belong to the organized militia or the troops of the United States was an ingredient in the offence for which he was convicted and sentenced. The question is, therefore, had he a right as a citizen of the United States, in disobedience of the State law, to associate with others as a military company, and to drill and parade with arms in the towns and cities of the State? If the plaintiff in error has any such privilege he must be able to point to the provision of the Constitution or statutes of the United States by which it is conferred. For, as was said by this court in *United States* v. *Cruikshank,* 92 U. S. 542, 560, 551, the government of the United States, although it is "within the scope of its powers supreme and above the States," " can neither grant nor secure to its citizens any right or privilege not expressly or by implication placed under its jurisdiction." " All that cannot be so granted or so secured are left to the exclusive protection of the State."

We have not been referred to any statute of the United States which confers upon the plaintiff in error the privilege which he asserts. The only clause in the Constitution which, upon any pretence, could be said to have any relation whatever to his right to associate with others as a military company is found in the First Amendment, which declares that "Congress shall make no law . . . abridging . . . the right of the people peaceably to assemble and to petition the government for a redress of grievances." This is a right which it was held in *United States* v. *Cruikshank*, above cited, was an attribute of national citizenship, and, as such, under the protection of, and guaranteed by, the United States. But it was held in the same case that the right peaceably to assemble was not protected by the clause referred to, unless the purpose of the assembly was to petition the government for a redress of grievances.

The right voluntarily to associate together as a military company or organization, or to drill or parade with arms, without, and independent of, an act of Congress or law of the State authorizing the same, is not an attribute of national citizenship. Military organization and military drill and parade under arms are subjects especially under the control of the government of every country. They cannot be claimed as a right independent of law. Under our political system they are subject to the regulation and control of the State and Federal governments, acting in due regard to their respective prerogatives and powers. The Constitution and laws of the United States will be searched in vain for any support to the view that these rights are privileges and immunities of citizens of the United States independent of some specific legislation on the subject.

It cannot be successfully questioned that the State governments, unless restrained by their own Constitutions, have the power to regulate or prohibit associations and meetings of the people, except in the case of peaceable assemblies to perform the duties or exercise the privileges of citizens of the United States; and have also the power to control and regulate the organization, drilling, and parading of military bodies and associations, except when such bodies or associations are

authorized by the militia laws of the United States. The exercise of this power by the States is necessary to the public peace, safety and good order. To deny the power would be to deny the right of the State to disperse assemblages organized for sedition and treason, and the right to suppress armed mobs bent on riot and rapine.

In the case of *New York* v. *Miln*, 11 Pet. 102, 139, this court said: "We choose rather to plant ourselves on what we consider impregnable positions. They are these: that a State has the same undeniable and unlimited jurisdiction over all persons and things within its territorial limits as any foreign nation, where that jurisdiction is not surrendered or restrained by the Constitution of the United States; that by virtue of this, it is not only the right but the bounden and solemn duty of a State to advance the safety, happiness and prosperity of its people, and to provide for its general welfare by any and every act of legislation which it may deem to be conducive to these ends, where the power over the particular subject or the manner of its exercise is not surrendered or restrained in the manner just stated," namely, by the Constitution and laws of the United States. See also *Gibbons* v. *Ogden*, 9 Wheat. 1, 203; *Gilman* v. *Philadelphia*, 3 Wall. 713; *License Tax Cases*, 5 Wall. 462; *United States* v. *Dewitt*, 9 Wall. 41; *United States* v. *Cruikshank*, 92 U. S. 542. These considerations and authorities sustain the power exercised by the legislature of Illinois in the enactment of sections 5 and 6 of Art. XI. of the Military Code.

The argument of the plaintiff in error that the legislation mentioned deprives him of either life, liberty or property without due process of law, or that it is a bill of attainder or *ex post facto* law, is so clearly untenable as to require no discussion.

It is next contended by the plaintiff in error that sections 5 and 6 of Art. XI. of the Military Code, under which he was indicted, are in conflict with the acts of Congress for the organization of the militia. But this position is based on what seems to us to be an unwarranted construction of the sections referred to. It is clear that their object was to forbid voluntary military associations, unauthorized by law, from organizing or

drilling and parading with arms in the cities or towns of the State, and not to interfere with the organization, arming and drilling of the militia under the authority of the acts of Congress. If the object and effect of the sections were in irreconcilable conflict with the acts of Congress they would of course be invalid. But it is a rule of construction that a statute must be interpreted so as, if possible, to make it consistent with the Constitution and the paramount law. *Parsons* v. *Bedford*, 3 Pet. 433 ; *Grenada County Supervisors* v. *Brogden*, 112 U. S. 261; *Marshall* v. *Grimes*, 41 Mississippi, 27. If we yielded to this contention of the plaintiff in error we should render the sections invalid by giving them a strained construction, which would make them antagonistic to the law of Congress. We cannot attribute to the legislature, unless compelled to do so by its plain words, a purpose to pass an act in conflict with an act of Congress on a subject over which Congress is given authority by the Constitution of the United States. We are therefore of opinion that fairly construed the sections of the Military Code referred to do not conflict with the laws of Congress on the subject of the militia.

The plaintiff in error further insists that the organization of the Lehr und Wehr Verein as a corporate body, under the general corporation law of the State of Illinois, was in effect a license from the governor, within the meaning of section 5 of Article XI. of the Military Code, and that such corporate body fell within the exception of the same section "of students in educational institutions where military science is a part of the course of instruction."

In respect to these points we have to say that they present no Federal question. It is not, therefore, our province to consider or decide them. *Murdock* v. *Memphis*, 20 Wall. 590.

All the Federal questions presented by the record were rightly decided by the Supreme Court of Illinois.

*Judgment affirmed.*