**Christopher PENCAK, Plaintiff,**

v.

**CONCEALED WEAPON LICENSING BOARD FOR the COUNTY OF ST. CLAIR; County of St. Clair; Marion Sargent, in her official capacity and individual capacity; Jean Gibson Sturtbridge, in her official and individual capacity; Det. Sgt. Michael Waite; in his official and individual capacity; Sgt. Michael G. Bloomfield, in his official and individual capacity, jointly and severally, Defendant.**

No. 94–73073.

United States District Court,
E.D. Michigan,
Southern Division.

Dec. 16, 1994.

Christopher Pencak, Warren, MI, for plaintiff.

Laura Amtsbuechler, St. Clair Shores, MI, Eric Eggan, Lansing, MI, for defendant.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS OR FOR SUMMARY JUDGMENT

EDMUNDS, District Judge.

This matter has come before the Court upon Defendants' Concealed Weapon Licensing Board for the County of St. Clair; County of St. Clair; and the members of the Board, Marion Sargent, Jean Gibson Sturtbridge, Det. Sgt. Michael Waite, and Sgt. Michael G. Bloomfield Motion to Dismiss or for Summary Judgment.

### I. Background

Plaintiff Christopher Pencak is an Attorney and "Pharmacy Consultant." For many years he carried a concealed weapons license issued by Concealed Weapons Licensing Board for the County of Macomb, restricted to two years while licensed as an attorney. The license expired on September 10, 1993. Some time prior to September 10, 1993, Plaintiff moved from Macomb County to St. Clair County. Plaintiff applied in St. Clair

County for a renewal of his license. He alleges that he was told by the county clerk that he should not spend his money for the renewal application because "nobody gets a CCW permit in St. Clair County. That is just the way it is." Plaintiff requested the renewal application nonetheless and paid the fee. He also requested an appointment with the prosecutor. Plaintiff alleges that the prosecutor told Pencak that the county had a policy of not issuing CCW permits, that the county licensing board would hold a hearing for him but that it would be futile, and that others have sued concerning this policy in St. Clair County Circuit Court but have been denied relief.

Plaintiff appeared at the hearing November 18, 1993 and presented his reasons for requiring his CCW permit to be renewed and his compliance with applicable law. Plaintiff contended that in his work representing criminal defendants and visiting pharmacy clients late at night he is subject to physical danger and therefore must be allowed to carry a concealed weapon.

The Board denied Plaintiff's application because it determined that Pencak did not provide compelling reasons for the issuance of a permit.

Plaintiff filed a complaint in this Court under 42 U.S.C. § 1983 asserting that the denial of his application to have a concealed weapons license by the St. Clair County Concealed Weapons Licensing Board violates the Second Amendment's right to bear arms, and the Fifth and Fourteenth Amendments' and Michigan Constitution guarantees of due process and equal protection because he met all the statutory requirements to carry a concealed weapon, but was not awarded a permit pursuant to Defendants' blanket policy of denying such permits. Defendants' filed this Motion to Dismiss or for Summary Judgment, arguing that the St. Clair County Concealed Weapons Licensing Board is not a legal entity that can be sued, that the Board's exercise of its discretion to deny Plaintiff a permit was reasonable, and that Plaintiff has failed to establish a liberty or property interest in either a license to carry a concealed weapon or to have his license renewed.

## II. Standards of review

### A. Standard for a motion to dismiss

In considering a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) this Court "must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief." *In re Delorean Motor Company,* 991 F.2d 1236, 1240 (6th Cir.1993). A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint. *Elliot Co., Inc. v. Caribbean Utilities Co., Ltd.,* 513 F.2d 1176, 1182 (6th Cir.1975). The complaint must include direct or indirect allegations "respecting all the material elements to sustain a recovery under *some* viable legal theory." *In re Delorean Motor Company,* 991 F.2d at 1240. (citations omitted). A motion to dismiss a complaint for failure to state a claim should not be granted "unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (citations omitted).

### B. Standard for summary judgment

In considering a motion for summary judgment, the Court may grant the motion only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). As the Supreme Court ruled in *Celotex,* "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

The court must view the allegations of the complaint in the light most favorable to the non-moving party. *Windsor v. The Tennessean,* 719 F.2d 155, 158 (6th Cir.1983). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby,*

*Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2519, 91 L.Ed.2d 202 (1986).

■ But the mere existence of a scintilla of evidence in support of the non-movant is not sufficient; there must be sufficient evidence upon which a jury could reasonably find for the non-movant. *Liberty Lobby,* 477 U.S. at 252, 106 S.Ct. at 2512. "The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict." *Id.* at 256, 106 S.Ct. at 2514. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue' for trial." *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1478 (6th Cir.1989) (citing *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

## III. Analysis

### A. Whether the Board is a legal entity that can be sued

■ Plaintiff has named as one Defendant the Concealed Weapons Licensing Board for the County of St. Clair. Defendants argue that the Board is not a separate legal entity but, rather, a department of St. Clair County and thus not a legal entity that can be sued. *See Hughson v. County of Antrim,* 707 F.Supp. 304 (W.D.Mich.1988).

The Concealed Weapons Licensing Board for the County of St. Clair is a creature of state statute, not a department of St. Clair County. Section 28.426(1) of Mich.Comp. Laws Ann. provides that

[t]he prosecuting attorney, the sheriff, and the director of the department of state police, or their respective authorized deputies, shall constitute boards exclusively authorized to issue a license to an applicant residing within their respective counties, to carry a pistol concealed on the person and to carry a pistol, whether concealed or otherwise, in a vehicle operated or occupied by the applicant. The county clerk of each county shall be clerk of the licensing board, which board shall be knows as the concealed weapon licensing board....

Mich.Comp.Laws Ann. § 28.426(1). Further, the concealed weapons license itself makes clear that the concealed weapons licensing boards are state statutory creations. The top of the license reads "Michigan Department of State Police," "Michigan Concealed Pistols License." The license provides that the applicant is "hereby licensed by the Concealed Weapons Licensing Board to carry a pistol ..." and at the bottom of the license lists the issuing county. Based on the foregoing, the Concealed Weapons Licensing Board for the County of St. Clear is a state, rather than county, department. Therefore, it is a proper legal entity against which a suit may lie.

### B. Second Amendment

■ Plaintiff asserts that Defendants deprived him of his right to carry a concealed weapon guaranteed by the Second Amendment to the United States Constitution. Plaintiff's Second Amendment claim is not viable because the Second Amendment does not apply to the states. "The Second Amendment declares that it shall not be infringed, but this ... means no more than that it shall not be infringed by Congress. This is one of the amendments that has no other effect than to restrict the powers of the National Government." *Presser v. Illinois,* 116 U.S. 252, 265, 6 S.Ct. 580, 584, 29 L.Ed. 615 (1886). Federal courts still follow *Presser. E.g., Quilici v. Village of Morton Grove,* 695 F.2d 261, 269 (7th Cir.1982), *cert. denied,* 464 U.S. 863, 104 S.Ct. 194, 78 L.Ed.2d 170 (1983).

### C. Equal protection

■ Plaintiff argues that Defendants' denial of a concealed weapon license violated the Fourteenth Amendment's guarantee of equal protection. Plaintiff apparently argues that Defendants deprived him of the fundamental right to carry a concealed weapon and travel, thus triggering strict scrutiny. The Second Amendment, however, does not provide Plaintiff with a fundamental right to carry a concealed weapon. An individual has "no private right to keep and bear arms under the Second Amendment ..." *United States v. Warin,* 530 F.2d 103, 106 (6th Cir.),

*cert. denied,* 426 U.S. 948, 96 S.Ct. 3168, 49 L.Ed.2d 1185 (1976).

 Nor does the St. Clair County Concealed Weapons Licensing Board's refusal to grant Plaintiff a permit deny him the right to travel. The right to interstate travel is a basic constitutional freedom. *Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969). The right to intrastate travel is a basic freedom under the Michigan Constitution, and the analysis of government burdens on intrastate travel under the Michigan Constitution is identical to the analysis applied to government burdens on interstate travel under the United States Constitution. *Musto v. Redford Township,* 137 Mich.App. 30, 34, 357 N.W.2d 791 (1984).

 Plaintiff contends that through their blanket policy of denying residents concealed weapons permits, Defendants have unconstitutionally deprived him of the right to migrate to St. Clair County. But not every policy that possibly burdens the right to travel triggers strict scrutiny. The court must consider whether the policy at issue deter migration or serves to penalize the right to travel. *Memorial Hospital v. Maricopa County,* 415 U.S. 250, 257, 94 S.Ct. 1076, 1081–82, 39 L.Ed.2d 306 (1974). Further, the "right to interstate [and intrastate] travel must be seen as insuring new residents the same right to vital government benefits and privileges in the States [and Counties] to which they migrate as are enjoyed by other residents." *Id.* at 261, 94 S.Ct. at 1084. Plaintiff has cited no authority for the proposition that denial of a concealed weapon permit deters migration, penalizes the right to travel, or that a concealed weapons permit is a "vital government benefit[ ] and privilege[ ]." While Plaintiff may feel a bit less secure not being able to carry a concealed weapon on his person or in his car when he drives into urban areas, the denial of a license for a concealed weapon is not tantamount to the denial or waiting period for the right to vote, *Dunn v. Blumstein,* 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972), or to receive welfare or medical benefits, *Shapiro, supra,* and *Maricopa County, supra.* A concealed weapons license is not even a government benefit that rises to the level of benefits deemed by the United States Supreme Court as not vital, such as lower university tuition, *Starns v. Malkerson,* 401 U.S. 985, 91 S.Ct. 1231, 28 L.Ed.2d 527 (1971), or suing for divorce, *Sosna v. Iowa,* 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975). Based on the foregoing, Defendants did not deprive Plaintiff of the right to travel and strict scrutiny is not triggered.

Therefore, the court must apply the rational basis test. This test is easily met. The state has an obvious "legitimate interest in limiting access to weapons peculiarly suited for criminal purposes." *People v. McFadden,* 31 Mich.App. 512, 516, 188 N.W.2d 141 (1971).

## D. Due Process

 Plaintiff finally argues that Defendants deprived him of due process of law by its blanket policy of denying concealed weapon permits. Nevertheless, Defendants are entitled to judgment as a matter of law because there is no genuine issue of material fact that Plaintiff has a property interest in obtaining a license to carry a concealed weapon.[1] Property interests protected by the Due Process Clause of the Fourteenth Amendment do not arise whenever a person has only "an abstract need or desire for," or "unilateral expectation of," a benefit. *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Rather, they arise from "legitimate claim[s] of entitlement ... defined by existing rules or understandings that stem from an independent source such as state law." *Id.*

In *Erdelyi v. O'Brien,* 680 F.2d 61 (9th Cir.1982), the Ninth Circuit Court of Appeals considered a claim by a plaintiff who had been denied a license to carry a concealed weapon and who brought suit under § 1983 alleging that the denial of the license violated her right to due process. The court rejected plaintiff's constitutional challenge, holding that plaintiff had no property interest in carrying a concealed weapon. The court reasoned:

---

1. Pencak does not argue that he has a liberty interest in carrying a concealed weapon.

Concealed weapons are closely regulated by the State of California.... Whether the statute creates a property interest in concealed weapons licenses depends 'largely upon the extent to which the statute contains mandatory language that restricts the discretion of the [issuing authority] to deny licenses to applicants who claim to meet the minimum eligibility requirements.' Section 12050 explicitly grants discretion to the issuing officer to issue or not issue a license to applicants meeting the minimum statutory requirements. Where state law gives the issuing authority broad discretion to grant or deny license applications in a closely regulated field, initial applicants do not have a property right in such licenses protected by the Fourteenth Amendment.

*Id.* (citations omitted).

The Michigan Concealed Weapons Law similarly grants discretion to the issuing authority. It establishes boards for each county exclusively authorized to issue a license to an applicant residing within their respective counties. Mich.Comp.Laws Ann. § 28.426(1). The statute establishes minimum criteria for a concealed weapons permit. An applicant for a permit to carry a concealed weapon must be at least 18 years old, a United States citizen and reside in the State of Michigan for at least the past six months. *Id.* The statute further provides that "[a] license shall not be issued unless it appears that the applicant has good reason to fear injury to his or her person or property, or has other proper reasons, and is a suitable person to be licensed." *Id.*

The St. Clair County Concealed Weapons Licensing Board Policy Manual in effect at the time Plaintiff applied for a license there makes clear that Pencak does not have a legitimate claim of entitlement to a concealed weapons permit. First, the Policy Manual grants the Board a large degree of discretion in issuing permits. It provides that

[l]icensing may be available depending upon the facts and circumstances presented to the Concealed Weapons Licensing Board in support of an application. The Concealed Weapons Licensing Board will evaluate all applications uniformly and ex-

ercise its discretion as it deems proper to assure the safety, interest and well-being of the citizens of this County and State.

Manual, page 4.

Moreover, the manual makes clear that the County Board normally will not issue concealed weapons permits. The manual provides for two types of permits: general and restrictive. General permits are restricted to "those persons connected with the criminal justice system, where there is a legitimate threat of bodily injury because of past, present or future dealing with criminal defendants." Manual, page 5. Further, the manual provides that "[t]his Board will require the applicant to establish by clear and convincing evidence that the presumption against issuance of [a general] license should be overruled in his or her case." *Id.*

The manual specifies four categories of restricted licenses, two of which Plaintiff conceivably could avail himself. One category is the "Direct Transit between Bank/Business/Home" permit. To obtain this permit, an applicant must, among other things, demonstrate the dangerousness of the area in which he or she transacts business and the unreasonableness of alternative measures which would accomplish the same purpose without the necessity of a concealed weapon license. Manual, page 8. Moreover, "[a] license of this nature will *not* normally be issued ..." and an applicant "must establish by clear and convincing evidence that this presumption against licensing should be overruled in his or her individual case." *Id.* The other category of which Plaintiff might fit is an "employment-related" permit. But to obtain one of these restricted permits, the applicant should be a security or bank guard. Manual, page 10. Based on the foregoing, there is no genuine issue of material fact that Plaintiff does not have a property interest in obtaining a concealed weapon license.

Plaintiff argues that *Erdelyi* only applies to initial applications for licenses and that he has a property interest in a license renewal. This argument has no merit. First, the manual expressly indicates that one should not expect to have his or her permit renewed as of right. The manual provides that

[l]icense holders who move here from another Michigan county are not automatically issued a St. Clair County License. The fact that the applicant has a previous permit will be noted, if a photocopy is provided to the Board, but the application will be considered as "new" and not a "renewal," and will be judged pursuant to St. Clair County standards and procedures.

Manual, page 13. Second, the structure of the Michigan concealed weapons statute shows that each county is responsible for determining to whom it will issue concealed weapons licenses. The statute establishes county boards and vests them with the exclusive authority to issue such licenses. Mich. Comp.Laws Ann. § 28.426(1). "[P]ower to issue and revoke [concealed weapons] licenses is properly placed with those professionals most able to assess community needs and problems in this area." *Bay County Concealed Weapons Licensing Board v. Gasta,* 96 Mich.App. 784, 293 N.W.2d 707 (1980).

## IV. Conclusion

Based on the foregoing, the Court hereby GRANTS Defendants' Motion to Dismiss or for Summary Judgment.