The Honorable Laura McClure State Representative, 119th District State Capitol, Room 278-W Topeka, Kansas 66612
Dear Representative McClure:
As representative for the 119th district you ask whether, under the federal constitution or the federal bill of rights, the citizens of Kansas currently have a right to carry a concealed weapon.
Kansas has a long history of prohibiting the carrying of a concealed weapon. As of 1867 Kansas law banned any person "not engaged in any legitimate business, any person under the influence of intoxicating drink, and any person who has ever borne arms against the Government of the United States" from carrying a deadly weapon. L. 1867, ch. 12, § 1.
In 1903 the law was changed to prohibit any person who was not an officer of the law or his deputy from carrying a deadly weapon on one's person in a concealed manner. L. 1903, ch. 216, § 1. Although subsequent amendments were made in 1923 (R.S. 1923, § 21-2411), in 1953 (L. 1953, ch. 185, § 1) and in 1955 (L. 1955, ch. 194, § 1), the 1903 version remained essentially intact until Kansas adopted a comprehensive weapons control law in 1969 (L. 1969, ch. 180, § 21-4201 et seq.). At that time prohibition of carrying a firearm concealed on one's person except when on one's land or abode or fixed place of business became the law of the state. L. 1969, ch. 180, § 21-4201(d). It remains illegal for any person to carry a concealed pistol, revolver or other firearm except when on one's own land, abode or fixed place of business. K.S.A. 21-4201(a)(4).
In effect you question whether the concealed firearm prohibition found at K.S.A. 21-4201(a)(4) violates the federal constitution or the federal bill of rights. Our discussion of your question will be limited to consideration of the second amendment to the United States constitution which provides:
 "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."
As aptly summarized in one of many law journal articles:
 "The meaning of this language has been extensively debated in light of what has aptly been termed The Great American Gun War.' Predictably, but unfortunately, the discussion has mirrored the terms, conditions and bitterness of that war.' Debate has been sharply polarized between those who claim that the amendment guarantees nothing to individuals, protects only the state's right to maintain organized military units, and thus poses no obstacle to gun control (the exclusively state's right' view), and those who claim that the amendment guarantees some sort of individual right to arms (the individual right' view)." Kates, Handgun Prohibition and the Original Meaning of the Second Amendment, 82 Mich. L.Rev. 204 (1983).
While popular understanding may well reflect the individual rights' view, with the exception of some early state court authority to the contrary [Nunn v State, 1 Ga. 243 (1846); English v. Texas, 35 Tex. 473
(1871); State v. Workman, 35 W. Va. (1891); Re Brickey, 70 P. 609 (Id. 1902)], federal and state court decisions have consistently upheld the states' rights position.
The United States Supreme Court has issued very few decisions directly addressing the second amendment. In its earliest case, United States v. Cruikshank, 92 U.S. 542,23 L.Ed. 588 (1876), the Court held that the right of the people to keep and bear arms:
 "[i]s not a right granted by the constitution. Neither is it in any manner dependent upon that instrument for its existence. The second amendment declares that it shall not be infringed, but this, as has been seen, means no more than that it shall not be infringed by congress. This is one of the amendments that has no other effect than to restrict the powers of the national government, leaving the people to look for their protection against any violation by the fellow-citizens of the rights it recognizes to what is called in City of New York v. Miln, 11 Pet. [102] 139, the powers which related to merely municipal legislation, or what was perhaps more properly called internal police' not surrendered or restrained' by the constitution of the United States." 92 U.S. at 553.
Ten years later the Court reiterated its position first announced in Cruikshank by stating "that the amendment is a limitation only upon the power of congress and the national government, and not upon that of the state." Presser v. State of Illinois, 116 U.S. 252,265, 6 S.Ct. 580, 584, 29 L.Ed. 615, 619 (1886). The Court further commented:
 "It is undoubtedly true that all citizens capable of bearing arms constitute the reserved military force or reserve militia of the United States as well as of the states, and, in view of this prerogative of the general government, as well as of its general powers, the states cannot, even laying the constitutional provision in question out of view, prohibit the people from keeping and bearing arms, so as to deprive the United States of their rightful resource for maintaining the public security, and disable the people from performing their duty to the general government." 116 U.S. at 265.
Fifty some years after Presser, following Jack Miller's conviction of transporting a sawed-off shotgun in interstate commerce in violation of the national firearms act of 1934, the Court in U.S. v. Miller,307 U.S. 174, 59 S.Ct. 816, 83 L.Ed. 1206 (1939), again and for the last time to date, addressed thesecond amendment:
 "In the absence of any evidence tending to show that possession or use of a shotgun having a barrel of less than eighteen inches in length' at this time has some reasonable relationship to the preservation or efficiency of a well regulated militia, we cannot say that the Second Amendment guarantees the right to keep and bear such an instrument. Certainly it is not within judicial notice that this weapon is any part of the ordinary military equipment or that its use could contribute to the common defense." Id. at 178.
Placing this pronouncement in historical context, the Court went on to say:
 "The Constitution as originally adopted granted to the Congress power — To provide for the calling forth the Militia to execute the Laws of the Union, suppress Insurrections and repel Invasions; to provide for organizing, arming, and disciplining the Militia, and for governing such Part of them as may be employed in the Service of the United States, reserving to the States respectively, the Appointment of the Officers, and the Authority of training the Militia according to the discipline prescribed by Congress.' [Art. 1, § 8, cl. 15, 16.] With obvious purpose to assure the continuation and render possible the effectiveness of such forces the declaration and guarantee of the Second Amendment were made. It must be interpreted and applied with that end in view.
 "The Militia which the States were expected to maintain and train is set in contrast with Troops which they were forbidden to keep without the consent of Congress. The sentiment of the time strongly disfavored standing armies; the common view was that adequate defense of country and laws could be secured through the Militia — civilians primarily, soldiers on occasion.
 "The signification attributed to the term Militia appears from the debates in the Convention, the history and legislation of Colonies and States, and the writings of approved commentators. These show plainly enough that the Militia comprised all males physically capable of acting in concert for the common defense. A body of citizens enrolled for military discipline.' And further, that ordinarily when called for service these men were expected to appear bearing arms supplied by themselves and of the kind in common use at the time." Id. at 178-79.
Thus the Court in Miller definitively related thesecond amendment's right to keep and bear arms to the states' right to maintain a well regulated militia as opposed to any individual right to possess weapons such as a sawed-off shotgun. The Court subsequently cited Miller for the concept that "the Second Amendment guarantees no right to keep and bear a firearm that does not have some reasonable relationship to the preservation or efficiency of a well regulated militia.'" Lewis v. United States, 445 U.S. 55, 65, fn 8,100 S.Ct. 915, 925, 63 L.Ed.2d 198, 209 (1980).
While not bearing directly on your question, we acknowledge the related issue raised by the Miller decision of whether the second amendment precludes prohibiting the possession by individuals of weapons which do have "some reasonable relationship to the preservation or efficiency of a well regulated militia." We believe that the reasoning expressed in United States v. Hale, supra, is controlling on this issue:
 "The Supreme Court has not addressed a Second Amendment issue since the Miller decision. Cases v. United States, 131 F.2d 916 (1st Cir. 1942), cert. denied, 319 U.S. 770, 63 S.Ct. 1431, 87 L.Ed. 1718
(1943) remains one of the most illuminating circuit opinions on the subject of military' weapons and the Second Amendment. Cases states that under the Second Amendment, the federal government can limit the keeping and bearing of arms by a single individual, as well as by a group of individuals, but it cannot prohibit the possession or use of any weapon which has any reasonable relationship to the preservation or efficiency of a well-regulated militia.' Id. at 922. After carefully examining the principles and implications of the then recent Miller decision, the First Circuit concluded that the existence of any reasonable relationship to the preservation of a well regulated militia' was best determined from the facts of each individual case. Id. Thus, it is not sufficient to prove that the weapon in question was susceptible to military use. Indeed, as recognized in Cases, most any lethal weapon has a potential military use. Id. Rather, the claimant of Second Amendment protection must prove that his or her possession of the weapon was reasonably related to a well regulated militia. Where such a claimant presented no evidence either that he was a member of a military organization or that his use of the weapon was in preparation for a military career', the Second Amendment did not protect the possession of the weapon. Id.
 "Since the Miller decision, no federal court has found any individual's possession of a military weapon to be reasonably related to a well regulated militia.' Technical' membership in a state militia (e.g., membership in an unorganized' state militia) or membership in a non-governmental military organization is not sufficient to satisfy the reasonable relationship' test. Oakes, 564 F.2d at 387. Membership in a hypothetical or sedentary' militia is likewise insufficient. See Warin, 530 F.2d 103." 978 F.2d at 1019-20. (Emphasis original.)
Federal circuit court decisions have uniformly cited Cruikshank, Presser, and Miller as upholding the propositions that the second amendment is a limitation only on the power of the federal government as a protection for the states in the maintenance of their militia organizations against possible encroachments by the federal power, is not applicable to the states and thus is not a limitation on the power of the states, and is a guarantee of a collective right of the people to keep and bear arms rather than an individual right. See Cases v. United States, 131 F.2d 916 (1st Cir. 1942); United States v. Kozerski, 518 F. Supp. 1082 (D.N.H. 1982), aff'd 740 F.2d 952 (1st Cir. 1984); United States v. Tot, 131 F.2d 548 (3rd Cir. 1942); Eckert v. City of Philadelphia, 329 F. Supp. 845 (E.D.Pa. 1971), aff'd477 F.2d 610 (3rd Cir. 1973); United States v. Johnson,497 F.2d 548 (4th Cir. 1974); Love v. Peppersack,47 F.3d 120 (4th Cir. 1995); United States v. Johnson,441 F.2d 1134 (5th Cir. 1971); United States v. Warin,530 F.2d 103 (6th Cir. 1976); Quilici v. Village of Morton Grove, 532 F. Supp. 1169 (N.D.Ill., E.D. 1981), aff'd 695 F.2d 261 (7th Cir. 1982); United States v. Hale, 976 F.2d 1016 (8th Cir. 1992); Fresno Rifle and Pistol Club, Inc. v. Van de Kamp, 746 F. Supp. 1415
(E.d. Ca. 1990), aff'd 965 F.2d 723 (9th Cir. 1992); United States v. Oakes, 564 F.2d 384 (10th Cir. 1977). With the exception of the few decisions referenced previously, state court decisions addressing thesecond amendment have been in accord with federal court decisions in holding that the second amendment is a limitation only on the power of congress and the national government, that it has not been incorporated into the fourteenth amendment and made applicable to the states, that it is not an individual but a collective right, and that it is not a right to keep and bear arms which do not have some reasonable relationship to the preservation or efficiency of a well regulated state organized militia. The state court cases cite varying combinations of Cruikshank, Presser, Miller as well as various federal circuit and district court cases referenced above. For a listing and summary of many of those cases see Annot., 37 A.L.R. Fed. 696 (1978).
It appears abundantly clear that state regulation concerning an individual's possession of concealed firearms is not precluded by the second amendment. In an early case the United State's Supreme Court recognized in dictum that "the right of the people to keep and bear arms (art. 2) is not infringed by laws prohibiting the carrying of concealed weapons." Robertson v. Baldwin, 165 U.S. 275, 281, 17 S.Ct. 326,329, 41 L.Ed. 715, 717 (1896), and more recently, as one federal district court succinctly summarized:
 "Having demonstrated, as we have, that the Second Amendment stays the hand of the National Government only, we conclude that the Constitution has left the question of gun control to the several states." Fresno Rifle and Pistol Club, Inc., 746 F. Supp. at 1419.
Cases which have specifically held that thesecond amendment does not prevent a state from prohibiting the carrying of concealed weapons include Pencak v. Concealed Weapon Licensing Board, 872 F. Supp. 410
(E.D.Mich. 1994) (second amendment claim of deprivation of right to carry concealed weapon not viable); Jones v. City of Little Rock, 862 S.W.2d 273 (Ark. 1993) (state may as matter of police power place appropriate restrictions on one's right to bear arms); Brown v. City of Chicago, 250 N.E.2d 129 (Il. 1969) (regulation which does not impair the maintenance of the State's active, organized militia is not in violation of either the terms or the purposes of the second amendment); State v. Goodno, 511 A.2d 456 (Me. 1986) (second amendment does not limit authority of state legislature, operates to restrict power of Congress only); and Moore v. Gallup, 45 N.Y.S.2d 63 (N.Y. 1943) (second amendment limits exertion of power of congress and national government not state).
We conclude that the Kansas prohibition against carrying a concealed firearm on one's person except when on one's own land, abode or fixed place of business, as provided by K.S.A. 21-4201(a)(4), does not violate thesecond amendment to the United States constitution. Thus, in response to your question, the second amendment to the United States constitution does not provide the citizens of Kansas with a right to carry a concealed weapon.
Very truly yours,
 CARLA J. STOVALL Attorney General for Kansas
 Camille Nohe Assistant Attorney General
CJS:JLM:CN:jm