**The STATE of Wyoming, Plaintiff,**

v.

**Lisa McADAMS, Defendant.**

No. 85–213.

Supreme Court of Wyoming.

March 4, 1986.

A.G. McClintock, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen. and Sylvia Lee Hackl, Sr. Asst. Atty. Gen., for plaintiff.

Daniel E. White of Vines, Rideout, Gusea & White, P.C., Cheyenne, for defendant.

Leonard Munker, Cheyenne and Stephen P. Halbrook, Fairfax, Va., for amicus curiae Cutlery Collectors Legislative Committee, Inc.

Bryan E. Sharratt of Sharratt & Sharratt, P.C., Wheatland and Robert Dowlut and Lynn C. Hearnes, Washington, D.C., for amici curiae Nat. Rifle Ass'n of America, Wyoming State Shooting Ass'n, Inc., Wyoming Outfitters' Ass'n and Wyoming State Muzzle Loaders' Assn.

Before THOMAS, C.J., and BROWN, CARDINE, URBIGKIT and MACY, JJ.

MACY, Justice.

This matter comes before us on a bill of exceptions filed by the State of Wyoming. The issue giving rise to the bill is whether § 6–8–104(a), W.S.1977 (June 1983 Replacement), which proscribes the carrying of concealed deadly weapons, is an unconstitutional infringement upon the right of citizens to bear arms in defense of themselves guaranteed by Art. 1, § 24 of the Wyoming Constitution. We hold that the statute is not unconstitutional for such reason.

On June 11, 1985, defendant was stopped by two deputies of the Campbell County sheriff's office for driving a vehicle without license plates. During the course of their inquiry, one of the deputies noticed that defendant had a knife in a sheath inside the right breast pocket of her jacket. Defendant advised the deputies that she was a cocktail waitress and that she carried the knife for her protection.

On June 12, 1985, defendant was charged with violating § 6–8–104(a), which provides in pertinent part as follows:

"A person who wears or carries a concealed deadly weapon is guilty of a misdemeanor * * *."

The trial court thereafter granted defendant's motion to dismiss the charge against her on the ground that the statute was unconstitutional, because it violated Art. 1, § 24 of the Wyoming Constitution, which provides:

"The right of citizens to bear arms in defense of themselves and of the state shall not be denied."

The State contends that the lower court erred in granting defendant's motion to dismiss for the reason that the constitutional right to bear arms is subject to the legitimate exercise of the State's police power. The State argues that, pursuant to its police power, it can restrict the time and manner in which weapons are possessed

without infringing upon any constitutional guarantee.

In contrast, defendant contends that the plain language of Art. 1, § 24 of the Wyoming Constitution leaves no room for restricting the manner of bearing arms. It is her contention that, so long as the weapon is possessed for defensive purposes, the constitutional right to such possession cannot be restricted in any respect. In support of her contention, she points to the history of territorial legislation regulating the possession of firearms. Apparently, defendant's claim is that because the possession of a concealed deadly weapon for defensive purposes was not prohibited in 1890, it cannot be prohibited in 1986. More succinctly, defendant seems to be saying that because the right to carry concealed arms for defensive purposes existed when the constitution was adopted, that right cannot now be infringed upon under the guise of regulation. We do not agree.

In the first place, a constitution is not a lifeless or static instrument, the interpretation of which is confined to the conditions and outlook prevailing at the time of its adoption; rather, a constitution is a flexible, vital, living document, which must be interpreted in light of changing conditions of society. 16 Am.Jur.2d, Constitutional Law § 96 (1979).

In the second place, defendant's argument incorrectly presumes that the right to carry concealed arms for defensive purposes did exist when the constitution was adopted. An absolute right to bear arms, concealed or otherwise, has never been recognized, even at common law. *State v. Rupp*, Iowa, 282 N.W.2d 125 (1979). In the case of *Carfield v. State*, Wyo., 649 P.2d 865 (1982), dealing with the constitutionality of a statute prohibiting a felon from carrying a weapon, this Court held that, by its very terms, Art. 1, § 24 of the Wyoming Constitution grants to citizens only a limited right to bear arms in defense of themselves and of the state. Because there was no claim by the appellant that he possessed the weapon for the purpose of defending the state or himself, the Court found it unnecessary to address the question we are presented with in the present case.

In practically all states, the police power has been invoked to regulate the manner in which constitutional rights are exercised. 79 Am.Jur.2d, Weapons and Firearms §§ 5 and 7 (1975). This Court, in the case of *State v. Langley*, 53 Wyo. 332, 84 P.2d 767, 770 (1938), affirmed such exercise of the police power when it stated:

"* * * It may be observed that section 6 of Article 1 * * * does not state that 'no person shall be deprived of life, liberty or property,' but states that no person shall be deprived thereof 'without due process of law.' That is a recognition of the fact that the natural and inherent rights are not absolute or unlimited, but are relative. It is a recognition, in other words, of the police power. That power, giving the legislature the right to enact laws for the health, safety, comfort, moral and general welfare of the people, is an attribute of sovereignty, is essential for every civilized government, is inherent in the legislature except as expressly limited, and no express grant thereof is necessary. * * * "

The police power cannot, however, be invoked in such a manner that it amounts to the destruction of the right to bear arms. *People v. Brown*, 253 Mich. 537, 235 N.W. 245, 82 A.L.R. 341 (1931); *State v. Dawson*, 272 N.C. 535, 159 S.E.2d 1 (1968). This precept is well stated in the case of *State v. Wilforth*, 74 Mo. 528, 530 (1881):

"* * * A statute which, under the pretense of regulating, amounts to a destruction of the right, or which requires arms to be so borne as to render them wholly useless for purposes of defense, would be clearly unconstitutional. * * * "

Thus, a balance must be struck between the individual's right to exercise each constitutional guarantee and society's right to enact laws which will ensure some semblance of order. As these interests will necessarily conflict, the question then becomes which party should accept the encroachment of its right. The solution to

the conflict is judicial in nature. Courts must be and are, whether willingly or not, the ultimate arbiters as to whether or not there is, in a particular case, an unwarranted invasion of constitutionally guaranteed rights. *State v. Langley*, supra.

This Court has taken the view that: "All statutes are presumed to be constitutional, and any reasonable doubts as to constitutionality are to be resolved in favor of constitutionality. [Citations.] The party attacking the constitutionality of a statute has a heavy burden of proving his contention, with all reasonable doubt resolved in favor of its constitutionality. * * * " *Carfield v. State*, 649 P.2d at 870.

However, this Court has also said

" * * * that even though police power is an attribute of sovereignty essential to civilized government and inherent in the legislative body, the means adopted for its exercise must be reasonable and designed to accomplish the end in view; [and] that the purposes for which the police power is invoked must have relation to the public weal, must be within the scope and in furtherance of that power, and the means adopted must be reasonable and appropriate for the accomplishment of and have a substantial connection with the end in view * * *." *Bulova Watch Company v. Zale Jewelry Company of Cheyenne*, Wyo., 371 P.2d 409, 417 (1962).

Keeping the Carfield standard in mind, and being mindful of the admonitions set forth in Bulova Watch Company, we find that our concealed deadly weapons statute is not an undue restraint upon our constitutional right to bear arms.

In most jurisdictions, statutes in varying terms prohibit the carrying of concealed deadly weapons. 79 Am.Jur.2d, Weapons and Firearms § 8 at 12 n. 89 (1975). Although the courts which have dealt with this subject have formulated many statements regarding the legislative purpose of such statutes, [1] the common thrust is that the statutes are intended to protect the public by preventing an individual from having on hand a deadly weapon of which the public is unaware, and which may be used in a sudden heat of passion. 79 Am. Jur.2d, Weapons and Firearms § 8, supra.

We are cognizant of the fact that our concealed deadly weapons statute imposes some limitation on a person's right to bear arms in defense of himself; but, when balanced against the object of the statute, we do not find the limitation unreasonable, particularly when we recognize that it is not always necessary, nor is it always lawful, to use deadly force in one's own defense. *Garcia v. State*, Wyo., 667 P.2d 1148 (1983).

---

1. See Annot., 43 A.L.R.2d 492, 495–498 (1955),    for an analysis of the object of statutes.