Bonnie MECIKALSKI, Appellant (Petitioner),

v.

The OFFICE OF the ATTORNEY GENERAL, DIVISION OF CRIMINAL INVESTIGATION, Appellee (Respondent).

No. 99–183.

Supreme Court of Wyoming.

April 21, 2000.

Representing Appellant: Robert T. Moxley of Gage & Moxley, Cheyenne, WY.

Representing Appellee: Gay Woodhouse, Attorney General; Paul Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Bryan A. Skoric, Assistant Attorney General.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN, and HILL, JJ.

HILL, Justice.

Appellant, Bonnie Mecikalski (Mecikalski), seeks review under W.R.A.P. 12.11 of an order of the district court affirming a finding by the Attorney General, Division of Crimi-

nal Investigation (DCI), that her application for a concealed firearm permit be denied. We affirm.

## ISSUES

Mecikalski raises these issues in her brief [1] and reply brief:

I. Must the term 'danger to self or others,' a statutory term long connoting mental illness, enacted as a limitation upon concealed weapons rights, be given the same meaning as it has been afforded in the other statutes where it has previously been utilized by the legislature?

II. Under Wyoming's 'shall issue' concealed carry weapons law, what is the legal threshold of evidence, sufficient to sustain the finding of a 'reasonable belief' that an applicant for concealed weapon rights constitutes a 'danger to herself or others?'

III. Can a finding that a citizen is a 'danger to herself or others' rest solely upon speculation, hearsay, innuendo, and extrastatutory factors, or must it pass objective muster?

[IV]. Where agency action is informal, should not the statutory scheme and its implementation be the sole focus of inquiry on judicial review?

[V.] Can 'relevant factors' be found outside the four corners of the statute, when applicants for concealed carry permits may be disqualified only on enumerated grounds?

[VI.] Can a statutory scheme for permit application and evaluation which takes place 'off the record' be upheld where 'fact finding' occurs in the absence of procedure, articulated standards, or express grant of authority?

DCI abbreviates the issue to this single statement:

Was the decision by the Division of Criminal Investigation to deny appellant a concealed weapon permit arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law?

## INTRODUCTION

■ Because the issues raised by Mecikalski in this appeal are couched in terms of a "right" to bear arms, we deem it essential to set out a bit of history with respect to the "privilege" to carry a concealed weapon.[2] The Constitution of the United States does not grant a right to bear arms: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. The United States Supreme Court has construed the Second Amendment (in conjunction with the Tenth Amendment) as not affecting the right of a citizen to bear arms. It means no more than that the right may not be infringed by Congress and constrains the federal government but not the several states. *U.S. v. Cruikshank,* 92 U.S. 542, 553, 23 L.Ed. 588 (1875); *Presser v. Illinois,* 116 U.S. 252, 265, 6 S.Ct. 580, 29 L.Ed. 615 (1886).

■ Wyoming has a parallel constitutional provision: "The right of citizens to bear arms in defense of themselves and of the state shall not be denied." Wyo. Const. art. 1, § 24. However, contemporaneously with adoption of the Wyoming Constitution, the legislature enacted this statute: "Every person, not being a traveler, who shall wear or carry any dirk, pistol, bowie-knife, dagger, sword-in-cane or any other dangerous or deadly weapon concealed, or who shall carry or wear any such weapon openly, with the intent or avowed purpose of injuring his fellow-man, shall be fined in any sum not exceeding one hundred dollars." 1890 Wyo. Territorial Sess. Laws, Ch. 73 § 96 (11th Legislative Assembly). The statute prohibiting the carrying of concealed weapons has

---

**1.** Although only a minor point, Appellant's Brief was not bound in the manner required by W.R.A.P. 7.05(c) (briefs shall be bound only at the upper left-hand corner). Failure to comply with the appellate rules may be grounds for a variety of sanctions. W.R.A.P. 1.03. In this instance we opt not to employ any sanction, but add this footnote to further disseminate to the Bar the necessity for thorough reading of the appellate rules.

**2.** An interesting and scholarly analysis of the Second Amendment and its genesis may be found in the opinion authored by Judge Sam R. Cummings in *United States v. Emerson,* 46 F.Supp.2d 598 (N.D.Texas 1999).

undergone many revisions over the years, and we shall set out the details of the current version of that statute in a later section of this opinion. We also note at this juncture that we have held that a statute prohibiting the carrying of concealed weapons is constitutional under Wyoming's right to bear arms provision. *State v. McAdams*, 714 P.2d 1236 (Wyo.1986).

■ Much like a driver's license, a permit to carry a concealed firearm is a "privilege" and not a "right." *See Griess v. Office of the Attorney General*, 932 P.2d 734, 739 (Wyo. 1997); 94 C.J.S. *Weapons* § 11 (1956); *Glasrud v. City of Laramie*, 934 P.2d 1242, 1246 (Wyo.1997); *Moreno v. Department of Revenue & Taxation*, 775 P.2d 497, 499 (Wyo. 1989); *Hanson v. State*, 673 P.2d 657, 658 (Wyo.1983); *Eastwood v. Wyoming Highway Department*, 76 Wyo. 247, 256, 301 P.2d 818, 821 (1956); *State v. Mertz*, 258 Kan. 745, 907 P.2d 847, 857 (1995); and 7A Am.Jur.2d *Automobiles and Highway Traffic* § 109 (1997). Just as one may not drive an automobile without a license, Wyo. Stat. Ann. § 31–7–136 (LEXIS 1999), one may not carry a concealed firearm without a permit. Wyo. Stat. Ann. § 6–8–104(a) (LEXIS 1999).[3]

Immediately prior to the adoption of the latest version of the concealed firearm permit statute, the predecessor statute provided:

§ 6–8–104. **Wearing or carrying concealed weapons; penalties; exceptions; permits.**

(a) A person who wears or carries a concealed deadly weapon is guilty of a misdemeanor punishable by a fine of not more than seven hundred fifty dollars ($750.00), imprisonment in the county jail for not more than six (6) months, or both, unless;

(i) The person is a peace officer; or

(ii) The person possesses a permit under subsection (b) of this section.

(b) A county sheriff may issue permits to travelers, merchant police, private detectives or other persons whose work, vocation or profession requires them to carry a weapon and who the sheriff believes are qualified, taking into account the person's general reputation and previous criminal record. the permits shall be issued for a three (3) year period and may be renewed for successive three (3) year periods. The sheriff may revoke a permit if the conduct of the permitee is contrary to the best interests of the state or its political subdivisions.

Wyo. Stat. § 6–8–104 (1983).

Wyo. Stat. Ann. § 6–8–104 (LEXIS 1999) currently provides:

§ 6–8–104. **Wearing or carrying concealed weapons; penalties; exceptions; permits**

(a) A person who wears or carries a concealed deadly weapon is guilty of a misdemeanor punishable by a fine of not more than seven hundred fifty dollars ($750.00), imprisonment in the county jail for not more than six (6) months, or both, unless:

(i) The person is a peace officer;

(ii) The person possesses a permit under this section; or

(iii) The person holds a valid permit from a state agency in another state authorizing him to carry a concealed firearm.

(b) The attorney general is authorized to issue permits to carry a concealed firearm to persons qualified as provided by this subsection. The attorney general shall promulgate rules necessary to carry out this section no later than October 1, 1994. Applications for a permit to carry a concealed firearm shall be made available and distributed by the division of criminal

---

3. The parallels between the privilege to obtain a driver's license and a concealed firearm permit are not precise. However, the similarities outweigh the differences. As with a concealed firearms permit, an agency is authorized to adopt rules and regulations governing the application process. Wyo. Stat. Ann. § 31–7–103 (LEXIS 1999). There are objective components one must meet in order to obtain a driver's license (e.g., eyesight test, ability to read traffic signs, knowledge of safe driving practices and traffic laws), but there is also a subjective component in that an applicant must be able to demonstrate in a subjective driving test an "ability to exercise ordinary and reasonable control of a motor vehicle[.]" Wyo. Stat. Ann. § 31–7–114 (LEXIS 1999).

investigation and local law enforcement agencies. The permit shall be valid throughout the state for a period of five (5) years from the date of issuance. The permittee shall carry the permit, together with valid identification at all times when the permittee is carrying a concealed firearm and shall display both the permit and proper identification upon request of any peace officer. The attorney general through the division shall issue a permit to any person who:

(i) Is a resident of the United States and has been a resident of Wyoming for not less than six (6) months prior to filing the application. The Wyoming residency requirements of this paragraph do not apply to any person who holds a valid permit from a state agency in another state authorizing him to carry a concealed weapon;

(ii) Is at least twenty-one (21) years of age;

(iii) Does not suffer from a physical infirmity which prevents the safe handling of a firearm;

(iv) Is not ineligible to possess a firearm pursuant to 18 U.S.C. section 922(g) or W.S. 6-8-102;

(v) Has not been committed to a state or federal facility for the abuse of a controlled substance or convicted of a violation of the Wyoming Controlled Substances Act of 1971, W.S. 35-7-1001 through 35-7-1057 or similar laws of any other state or the United States relating to controlled substances;

(vi) Does not chronically or habitually use alcoholic liquor and malt beverages to the extent that his normal faculties are impaired. It shall be presumed that an applicant chronically and habitually uses alcoholic beverages to the extent that his normal faculties are impaired if the applicant has been involuntarily committed to any residential facility pursuant to the laws of this state or similar laws of any other state as a result of the use of alcohol;

(vii) Demonstrates familiarity with a firearm. A legible photocopy of a certificate of completion of any of the courses or classes or a notarized affidavit from the instructor, school, club, organization or group that conducted or taught the course or class attesting to the completion of the course or class by the applicant or a copy of any document which shows completion of the course or class or evidences participation of firearms competition, shall constitute evidence of qualification under this paragraph. Any one (1) of the following activities listed in this paragraph shall be sufficient to demonstrate familiarity with a firearm:

(A) Completion of any certified firearm safety or training course utilizing instructors certified by the National Rifle Association or the Wyoming law enforcement academy;

(B) Completion of any law enforcement firearms safety or training course or class offered for security guards, investigators, special deputies, or any division of law enforcement or security enforcement;

(C) Experience with a firearm through participation in an organized handgun shooting competition or military service;

(D) Completion of any firearms training or safety course or class conducted by a state certified or National Rifle Association certified firearms instructor;

(E) Be certified as proficient in firearms safety by any Wyoming law enforcement agency under procedures established by that agency; or

(F) Honorable retirement as a federal or state peace officer who has a minimum of ten (10) years of service.

(viii) Is not currently adjudicated to be legally incompetent; and

(ix) Has not been committed to a mental institution.

(c) The division may deny a permit if the applicant has been found guilty of or has pled nolo contendere to one (1) or more crimes of violence constituting a misdemeanor offense within the three (3) year period prior to the date on which the application is submitted or may revoke a permit

if the permittee has been found guilty of or has pled nolo contendere to one (1) or more crimes of violence constituting a misdemeanor offense within the preceding three (3) years.

(d) The application shall be completed, under oath, on a form promulgated by the attorney general to include:

(i) The name, address, place and date of birth of the applicant;

(ii) A statement that, to the best of his knowledge, the applicant is in compliance with criteria contained within this section;

(iii) A statement that the applicant has been furnished a copy of this section and is knowledgeable of its provisions;

(iv) A conspicuous warning that the application is executed under oath and that a materially false answer to any question or the submission of any materially false document by the applicant may result in denial or revocation of a permit and subjects the applicant to criminal prosecution under W.S. 6-5-303.

(e) The applicant shall submit to the division through the sheriff's office in the county of the applicant's residence:

(i) A completed application as described in subsection (d) of this section;

(ii) A nonrefundable permit fee of fifty dollars ($50.00), if he has not previously been issued a statewide permit, or a nonrefundable permit fee of fifty dollars ($50.00) for renewal of a permit;

(iii) A full set of fingerprints of the applicant administered by a law enforcement agency. The actual cost of processing the set of fingerprints required in this paragraph shall be borne by the applicant;

(iv) A photocopy of a certificate or an affidavit or document as provided by paragraph (b)(vii) of this section.

(f) The sheriff's office shall forward items received under subsection (e) of this section but shall retain ten dollars ($10.00) of each original permit fee and five dollars ($5.00) of each renewal permit fee. The division, upon receipt of the items listed in subsection (e) of this section, shall process the full set of fingerprints of the applicant for any criminal justice information. The cost of processing the fingerprints shall be payable to the division.

(g) The sheriff of the applicant's county of residence shall submit a written report to the division containing any information that he feels may be pertinent to the issuance of a permit to any applicant. The written report shall state facts known to the sheriff which establish reasonable grounds to believe that the applicant has been or is reasonably likely to be a danger to himself or others, or to the community at large as a result of the applicant's mental or psychological state, as demonstrated by a past pattern or practice of behavior, or participation in incidents involving a controlled substance, alcohol abuse, violence or threats of violence as these incidents relate to criteria listed in this section. The written report shall be made within thirty (30) days after the date the sheriff receives the copy of the application. The sheriff of the applicant's county of residence shall notify the chief of police, if any, of the applicant's place of residence of the application for a concealed firearm permit by the applicant. The chief of police shall submit written comments to the division under the guidelines prescribed in this section. Submitted comments shall not be considered a public record.

(h) The sheriff of the applicant's county of residence may, at his discretion, submit a written report to the division recommending immediate issuance of a concealed firearm permit prior to the mandatory fingerprint processing. The written recommendation shall specifically state that the sheriff has personal knowledge that the applicant is qualified to be issued a permit.

(j)[4] The sheriff of the applicant's county of residence may, at his discretion,

---

4. Appellant expressed concern that section (i) [between section (h) and (j)] was missing. The

statute section and subsection numbering system used by the Wyoming Legislature omits the use

submit a written report to the division recommending the issuance of a concealed firearm permit to an applicant between eighteen (18) and twenty-one (21) years of age who meets the requirements specified in this section. The written recommendation shall specifically state that the sheriff has personal knowledge of the applicant's situation or circumstances which warrant the issuance of a concealed firearm permit. The division may issue a permit to carry a concealed firearm to those individuals between eighteen (18) and twenty-one (21) years of age under circumstances that a reasonable, prudent person would believe warrant the issuance of a permit to carry a concealed firearm. The decision to issue a concealed firearm permit shall be based on the satisfactory completion of the requirements of this section and any voluntary written report offered by the sheriff of the county of the applicant's residence which shall clearly state the reasons the applicant should be issued a permit. The applicant may submit a written report containing relevant facts for consideration by the division.

(k) An applicant shall pay the cost of fingerprinting services for one (1) set of fingerprints and shall not be charged for any additional services necessary to obtain a legible set of fingerprints.

(m) The division shall, within sixty (60) days after the date of receipt of the items listed in subsection (e) of this section, either:

(i) Issue the permit; or

(ii) Deny the application based on the ground that the applicant fails to qualify under the criteria listed in this section or upon reasonable grounds for denial specified under subsection (g) of this section. If the division denies the application, it shall notify the applicant in writing, stating the grounds for denial and informing the applicant of a right to submit, within thirty (30) days, any additional documentation relating to the grounds of denial. Upon receiving any additional

documentation, the division shall reconsider its decision and inform the applicant within twenty (20) days of the result of the reconsideration. The applicant shall further be informed of the right to seek review of the denial in the district court pursuant to the Wyoming Administrative Procedure Act, W.S. 16–3–101 through 16–3–115.

(n) The division shall maintain an automated listing of permit holders and pertinent information, and the information shall be available on-line, upon request, at all times to all Wyoming law enforcement agencies.

(o) Within thirty (30) days after the changing of a permanent address, or within thirty (30) days after the loss or destruction of a permit, the permittee, including any permittee under paragraph (a)(iii) of this section, shall so notify the division. Violation of this subsection may result in cancellation or revocation of the permit.

(p) In the event that a permit is lost or destroyed, the permit shall be automatically invalid, and the person to whom the same was issued may, upon payment of a five dollar ($5.00) fee to the division, obtain a duplicate, upon furnishing a notarized statement to the division that the permit has been lost or destroyed.

(q) A permit issued under this section shall be revoked by the division:

(i) If the permittee becomes ineligible to be issued a permit under the criteria set forth in this section; or

(ii) For any conviction of any offense involving a controlled substance, alcohol abuse while carrying a concealed weapon or any crime of violence or a plea of nolo contendere to any of these crimes.

(r) Repealed by Laws 1995, ch. 147, § 1, [eff. Feb. 24, 1995.]

(s) The permittee may renew his permit on or before the expiration date by filing with the sheriff of the applicant's county of residence the renewal form, a notarized affidavit stating that the permittee remains

of (i) in enumerating subsections of statutes. This also applies to sections (*l*), (v), and (x),

below. The purpose, of course, is to avoid confusion between subsections and sub-subsections.

qualified pursuant to the criteria specified in this section, and the required renewal fee. The permit shall be renewed to a qualified applicant upon receipt of the completed renewal application, appropriate payment of fees and the division shall verify that the criminal history information available to the division does not indicate that possession of a firearm by the applicant would constitute a violation of state or federal law. A permittee who fails to file a renewal application on or before its expiration date shall renew his permit by paying a late fee of ten dollars ($10.00). No permit shall be renewed six (6) months or more after its expiration date, and the permit shall be deemed to be permanently expired. A person whose permit has permanently expired may reapply for a permit pursuant to subsections (b) through (e) of this section.

(t) No permit issued pursuant to this section or any permit issued from any other state shall authorize any person to carry a concealed firearm into:

(i) Any facility used primarily for law enforcement operations or administration without the written consent of the chief administrator;

(ii) Any detention facility, prison or jail;

(iii) Any courtroom, except that nothing in this section shall preclude a judge from carrying a concealed weapon or determining who will carry a concealed weapon in the courtroom;

(iv) Any meeting of a governmental entity;

(v) Any meeting of the legislature or a committee thereof;

(vi) Any school, college or professional athletic event not related to firearms;

(vii) Any portion of an establishment licensed to dispense alcoholic liquor and malt beverages for consumption on the premises, which portion of the establishment is primarily devoted to that purpose;

(viii) Any place where persons are assembled for public worship, without the written consent of the chief administrator of that place;

(ix) Any elementary or secondary school facility;

(x) Any college or university facility without the written consent of the security service of the college or university; or

(xi) Any place where the carrying of firearms is prohibited by federal law or regulation or state law or regulation.

(u) All monies collected pursuant to this section shall be deposited in the general fund.

(w) All funds received by the sheriff pursuant to the provisions of this section shall be deposited into the general fund of the county.

(y) As used in this section:

(i) "Division" means the division of criminal investigation within the office of the attorney general;

(ii) "Firearm" means any pistol, revolver or derringer, designed to be fired by the use of a single hand.

(z) By March 1 of each year, the division shall submit a statistical report to the governor and to the joint judiciary interim committee indicating the number of permits issued, revoked, suspended and denied.

(aa) Notwithstanding the provisions of W.S. 1–39–105 through 1–39–112, the attorney general and members of the division of criminal investigation are immune from personal liability for issuing, for failing to issue and for revoking any concealed firearms permit under this section. A sheriff, police chief, employee of a sheriff or police chief's office shall not be personally liable for damages in a civil action arising from any information submitted pursuant to subsections (g) through (j) of this section. Nothing in this section shall relieve any governmental entity of any liability pursuant to W.S. 1–39–101 through 1–39–120.

## FACTS

On January 28, 1998, Mecikalski submitted her Concealed Firearm Permit Application

on the form promulgated by DCI under Wyo. Stat. Ann. § 6–8–104(b). Her application fulfilled all the requirements set out in § 6–8–104(b), and she otherwise met the statutory criteria to qualify for a concealed firearm permit, except for § 6–8–104(g). That section calls for the local sheriff and the chief of police, if applicable, to submit written reports "containing any information ... pertinent to the issuance of a permit to ... [the] applicant." The sheriff's report, dated February 18, 1998, and submitted on a form promulgated by DCI, indicated that Mecikalski was a danger to herself, to others, and to the community at large. The report did not indicate that Mecikalski had a local "record," but did state that she had "numerous contacts" with the sheriff. In his narrative, the sheriff provided this information:

> Applicant has a number of disturbance complaints on file with the Laramie Police Department, involving disputes between her and customers. I am enclosing a copy of the records of contacts from both of our agencies. I have witnessed several hostile situations with her and will not recommend that a CFP be issued.

The sheriff recommended that Mecikalski's concealed firearm permit be denied.

On February 10, 1998, the chief of police of the Laramie Police Department also completed a form similar to that submitted by the sheriff. The chief of police also indicated that Mecikalski was a danger to herself, to others, and to the community at large, and that she had "numerous contacts" with the police department. The chief of police attached a five-page computer printout detailing Mecikalski's contacts with the police department. The chief of police stated in his narrative that Mecikalski had "... been involved in numerous disturbance complaints and displayed aggressive, angry behavior." The computer printout provided by the chief of police demonstrated: That Mecikalski had been a suspect in threats/harassment/disturbances situations on four occasions; that she had been a suspect in domestic disputes on four occasions; and that she had over 60 "contacts" with the police department over an 18–year period (1980–98) (albeit many were contacts that she herself initiated as a victim or witness).

The record is not entirely clear as to what date Mecikalski's application was complete and ripe for review by DCI. However, by letter dated June 2, 1998, DCI informed Mecikalski that her request for a concealed firearm permit was denied on the basis of information gathered under § 6–8–104(g). That letter also informed her that she could submit additional documentation within 30 days, and that DCI would reconsider its decision in light of the additional information. Mecikalski did seek reconsideration of DCI's decision. However, by letter dated August 5, 1998, DCI reaffirmed its decision to deny the permit.

On December 18, 1998, Mecikalski filed a petition for review in the District Court, Second Judicial District, Albany County, pursuant to W.R.A.P. 12.03. The district court affirmed, and Mecikalski seeks review here pursuant to W.R.A.P. 12.11.

█ The standards of review applicable to analysis of the action taken by DCI and the construction of the governing statute are set out in detail in *Griess*, 932 P.2d at 736–39, and we will not repeat them here. Mecikalski's principal contention is that § 6–8–104(b) required DCI to issue her a concealed firearms permit if she met all of the criteria set out in the statute. However, the statute also requires reports from the sheriff and the chief of police. Subsection 6–8–104(m)(ii) requires DCI to deny such a permit if there are reasonable grounds for denial based on the specifications of § 6–8–104(g). The statute invests broad discretion in the DCI, county sheriffs, and chiefs of police in this regard. *Griess*, 932 P.2d at 739; also see §§ 6–8–104(h) and (j); and 94 C.J.S. *Weapons* § 11 (1956); *see generally McIntyre v. Page County Sheriff's Office*, 538 N.W.2d 305, 308 (Iowa App.1995); and *Ambrogio v. Board of Firearms Permit Examiners*, 42 Conn.Supp. 157, 607 A.2d 460, 464 (1992). The statute, when read in pari materia, clearly demonstrates a legislative intent to rely heavily upon the expertise of local law enforcement officials in making judgments about individuals who seek concealed firearm permits. Not only is that legislative intent

clear in the statute, it is extraordinarily sensible. We agree that the statute is quite generous in directing DCI to issue concealed firearm permits to qualified individuals without proof of a specific need. However, it is also very restrictive in commanding DCI to deny permits if there are reasonable grounds, based in fact, that issuance of the permit is likely to endanger the community. One of the most significant changes to the concealed firearms statute is that it is valid throughout the state of Wyoming and likely good in many of our sister states. Thus, the "community" to be protected from ill-advised issuance of such permits is a large one and, commensurate with that, the discretion placed in law enforcement officials is broad. Here, the basis for denial was reasonable under any measure of that term known to us or offered to us for consideration by Mecikalski, particularly given the framework of the governing statute.

■ Mecikalski also implicitly asserts that she should be entitled to what amounts to discovery and a formal hearing with regard to information provided pursuant to § 6–8–104(g). The statute does not provide for discovery or a formal hearing, and we decline to read such requirements into the statute. An aggrieved applicant is given the opportunity to rebut the findings and conclusions of the DCI through a request for reconsideration of denial of a permit. Although Mecikalski did submit such a request, it was not accompanied by documentation, rebuttal, explanation, argument, authority, affidavits, or any other written material which served to discredit the decision reached by DCI.

■ We will tarry only briefly with Mecikalski's contention that this Court must construe the language contained in § 6–8–104(g) *only* in light of the definition of "dangerous to himself or others" set out in Wyo. Stat. Ann. § 25–10–101(a)(ii) (LEXIS 1999). Of course, § 6–8–104(g) does not refer us to Title 25, chapter 10, but rather is manifest in describing a context wholly different from that treated in § 25–10–101 *et seq.* (mental health; involuntary commitment). Reference to Title 25 may, in some circumstances, be instructive, but it is not determinative of the sort of issues likely to arise in the context of § 6–8–104(g).

### CONCLUSION

The order of the district court affirming the DCI's denial of Mecikalski's application for a concealed firearms permit is affirmed.