2004 WY 52

**Roger A. KING, Appellant (Petitioner),**

v.

**The WYOMING DIVISION OF CRIMINAL INVESTIGATION, Appellee (Respondent).**

**No. 03–62.**

Supreme Court of Wyoming.

May 7, 2004.

Representing Appellant: Mike Cornia, Evanston, Wyoming.

Representing Appellee: Patrick J. Crank, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Georgia L. Tibbetts, Senior Assistant Attorney General.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

KITE, Justice.

[¶ 1]   The Wyoming Department of Criminal Investigation (DCI) denied Roger King's (King) application for a concealed firearm permit because he had been convicted of breach of peace involving an altercation with his spouse.  Mr. King sought reconsideration of that decision claiming his conviction was not a "misdemeanor crime for domestic violence" as provided by federal law, which would prevent issuance of the permit.  The district court affirmed DCI's decision, and we do the same.

## ISSUES

[¶ 2]   Mr. King presents the following issues:

I.   The Division of Criminal Investigation made an error of law in its misapplication of statutory and case law when it denied the appellant's application.

II.   The Division[']s denial of the permit violated appellant's right to due process.

[¶ 3]   DCI phrases the issue as follows:

Did appellee properly deny appellant's application for a concealed firearm permit?

## FACTS

[¶ 4]   On December 6, 2001, Mr. King applied for a concealed firearm permit through the Albany County Sheriff's office.  The application and other pertinent documents were forwarded to DCI for processing.  As part of the application process, DCI performed a routine criminal background check of Mr. King, which revealed that on August 21, 1990, Mr. King was charged with disturbing the peace under Wyo. Stat. § 6–6–102(a) and (b) (Michie 1988) after a domestic dispute with his estranged wife.  The information alleged Mr. King "forced his way into the home of his estranged wife, Linda King, grabbed her by her arms, threw her down, threatened to hit her with a closed fist, and broke several items of personal property."  Mr. King pled guilty to the charge and the court entered a judgment and sentence on September 28, 1990.

[¶ 5]   In a letter dated May 2, 2002, DCI notified Mr. King his application was denied based upon his 1990 conviction.  DCI reasoned that Wyo. Stat. Ann. § 6–8–104(b)(iv) (LexisNexis 2001) prohibits issuance of a concealed firearm permit to those persons not eligible to possess a firearm pursuant to 18 U.S.C. § 922(g).  The federal statute makes it unlawful for any person who has been convicted of a misdemeanor crime of domestic violence to possess a firearm.  DCI informed Mr. King he could contact the Bureau of Alcohol, Tobacco and Firearms (ATF) or the U.S. Department of Justice regarding his eligibility to possess a firearm under 18 U.S.C. § 922(g), and indicated it would reconsider its decision if Mr. King

could obtain written documentation indicating he was eligible to possess a firearm under federal law.

[¶ 6]   On May 20, 2002, Mr. King requested reconsideration of DCI's denial of his application for the permit claiming the 1990 conviction did not make him ineligible to possess a firearm under 18 U.S.C. § 922(g). He provided DCI with a protection order that was issued involving his estranged wife and a copy of the September 28, 1990, judgment and sentence for his disturbance of the peace conviction.   However, Mr. King did not provide any documentation from ATF or the Department of Justice indicating he was eligible to possess a firearm.   DCI sought an opinion from the U.S. Attorney's office as to Mr. King's status under federal law.   The U.S. Attorney's office determined that "after reading the applicable statutes, researching the matter, and consulting with other attorneys in this office, our consensus is that under the proper factual circumstances, and assuming the statutory prerequisites are met, a person convicted of § 6–6–102 would be prohibited from possessing firearms under federal law."

[¶ 7]   On June 26, 2002, DCI affirmed its decision to deny Mr. King's application for a concealed firearm permit.   Mr. King filed a petition for writ of review with the district court.   The district court affirmed DCI's denial of Mr. King's application concluding, "DCI is correct in its assertion that [Mr. King] is precluded from possessing a firearm under 18 U.S.C. § 922(g).   That being the case, the agency was obliged to deny his application for a permit to carry a concealed firearm pursuant to W.S. § 6–8–104(m)(ii), and its decision must be affirmed here." This appeal followed.

## STANDARD OF REVIEW

[¶ 8]   Our review of an administrative agency's decision is governed by Wyo. Stat. Ann. § 16–3–114(c) (LexisNexis 2003) as set forth in *State ex rel. Department of Transportation v. Legarda,* 2003 WY 130, ¶¶ 9–10, 77 P.3d 708, ¶¶ 9–10 (Wyo.2003):

> (c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action.   In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error.   The reviewing court shall:
>
> . . .
>
> (ii) Hold unlawful and set aside agency action, findings and conclusions found to be:
>
> (A) Arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
>
> . . .
>
> (E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

Our review is further governed by the following standards:

> We do not afford any special deference to the district court's decision when we review a matter initiated before an administrative agency.   Rather, this court reviews the case as if it came directly from the administrative agency. Our review must focus on the evidence and consider the reasonableness of the agency's exercise of judgment while determining if the agency committed any errors of law. If the agency committed any errors of law, this court must correct them.

[¶ 9]   This case also involves a question of statutory interpretation about which we have said:

> We first decide whether the statute is clear or ambiguous.   This Court makes that determination as a matter of law.   A "statute is unambiguous if its wording is such that reasonable persons are able to agree as to its meaning with consistency and predictability."   A "statute is ambiguous only if it is found to be vague or uncertain and subject to varying interpretations."   If we determine that a statute is clear and unambiguous, we give effect to the plain language of the statute.   We begin by making an "inquiry respecting the ordinary and obvious meaning of the words employed according to their arrangement and connection."   We construe the statute as a whole, giving effect to every word, clause,

and sentence, and we construe together all parts of the statute *in pari materia*. If we determine that the statute is ambiguous, we resort to general principles of statutory construction to determine the legislature's intent.

*Airtouch Communications, Inc. v. Department of Revenue*, 2003 WY 114, ¶ 10, 76 P.3d 342, ¶ 10 (Wyo.2003) (citations omitted).

## DISCUSSION

[¶ 10] Mr. King argues DCI's denial of his application for a concealed firearm permit based on his conviction for breach of peace was erroneous. He contends that a conviction under a Wyoming statute containing "violent actions" as an element is not adequate to trigger the federal statute that prohibits those convicted of a "misdemeanor for domestic violence" from possessing a firearm.

[¶ 11] Section 6–8–104(b) authorizes the Wyoming attorney general, through DCI, to issue a permit to carry a concealed firearm to any qualified person. The statute lists nine conditions that an applicant must meet in order to qualify for a concealed firearm permit. Those conditions are:

(b) The attorney general is authorized to issue permits to carry a concealed firearm to persons qualified as provided by this subsection. The attorney general shall promulgate rules necessary to carry out this section no later than October 1, 1994. Applications for a permit to carry a concealed firearm shall be made available and distributed by the division of criminal investigation and local law enforcement agencies. The permit shall be valid throughout the state for a period of five (5) years from the date of issuance. The permittee shall carry the permit, together with valid identification at all times when the permittee is carrying a concealed firearm and shall display both the permit and proper identification upon request of any peace officer. The attorney general through the division shall issue a permit to any person who:

(i) Is a resident of the United States and has been a resident of Wyoming for not less than six (6) months prior to filing the application. The Wyoming residency requirements of this paragraph do not apply to any person who holds a valid permit authorizing him to carry a concealed firearm authorized and issued by a governmental agency or entity in another state that recognizes Wyoming permits, is a valid statewide permit, and the state has laws similar to the provisions of this section, as determined by the attorney general, including a proper background check of the permit holder;

(ii) Is at least twenty-one (21) years of age;

(iii) Does not suffer from a physical infirmity which prevents the safe handling of a firearm;

(iv) Is not ineligible to possess a firearm pursuant to 18 U.S.C. section 922(g) or W.S. 6–8–102;

(v) Has not been committed to a state or federal facility for the abuse of a controlled substance or convicted of a violation of the Wyoming Controlled Substances Act of 1971, W.S. 35–7–1001 through 35–7–1057 or similar laws of any other state or the United States relating to controlled substances;

(vi) Does not chronically or habitually use alcoholic liquor and malt beverages to the extent that his normal faculties are impaired. It shall be presumed that an applicant chronically and habitually uses alcoholic beverages to the extent that his normal faculties are impaired if the applicant has been involuntarily committed to any residential facility pursuant to the laws of this state or similar laws of any other state as a result of the use of alcohol;

(vii) Demonstrates familiarity with a firearm. A legible photocopy of a certificate of completion of any of the courses or classes or a notarized affidavit from the instructor, school, club, organization or group that conducted or taught the course or class attesting to the completion of the course or class by the applicant or a copy of any document which shows completion of the course or class or evidences participation of firearms competition, shall constitute evidence of qualification under this paragraph. Any one (1) of the following

activities listed in this paragraph shall be sufficient to demonstrate familiarity with a firearm:

    (A) Completion of any certified firearm safety or training course utilizing instructors certified by the National Rifle Association or the Wyoming law enforcement academy;

    (B) Completion of any law enforcement firearms safety or training course or class offered for security guards, investigators, special deputies, or any division of law enforcement or security enforcement;

    (C) Experience with a firearm through participation in an organized handgun shooting competition or military service;

    (D) Completion of any firearms training or safety course or class conducted by a state certified or National Rifle Association certified firearms instructor;

    (E) Be certified as proficient in firearms safety by any Wyoming law enforcement agency under procedures established by that agency; or

    (F) Honorable retirement as a federal or state peace officer who has a minimum of ten (10) years of service.

    (viii) Is not currently adjudicated to be legally incompetent; and

    (ix) Has not been committed to a mental institution.

[¶ 12]  In denying Mr. King's permit, DCI relied upon § 6–8–104(b)(iv) which prohibits a person from receiving a concealed firearm permit if he is ineligible to possess a firearm pursuant to 18 U.S.C § 922(g)(9).[1] This federal statute provides it is illegal for any person "who has been convicted in any court of a misdemeanor crime of domestic violence, to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." *Id.* "A misdemeanor crime of domestic violence" is defined in 18 U.S.C. § 921(a)(33) as follows:

33)(A) Except as provided in subparagraph (C), the term "misdemeanor crime of domestic violence" means an offense that—

    (i) is a misdemeanor under Federal or State law; and

    (ii) has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim.

(B) (i) A person shall not be considered to have been convicted of such an offense for purposes of this chapter [18 USCS §§ 921 et seq.], unless—

    (I) the person was represented by counsel in the case, or knowingly and intelligently waived the right to counsel in the case; and

    (II) in the case of a prosecution for an offense described in this paragraph for which a person was entitled to a jury trial in the jurisdiction in which the case was tried, either

      (aa) the case was tried by a jury, or

      (bb) the person knowingly and intelligently waived the right to have the case tried by a jury, by guilty plea or otherwise.

(ii) A person shall not be considered to have been convicted of such an offense for purposes of this chapter [18 USCS §§ 921 et seq.] if the conviction has been expunged or set aside, or is an offense for which the person has been pardoned or has had civil rights restored (if the law of the applicable jurisdiction provides for the loss of civil rights under such an offense) unless the pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

[¶ 13]  The federal statute explicitly requires that the predicate offense, which creates the ineligibility, must include as an ele-

---

1.  This statute is commonly referred to as the    "Lautenberg Amendment."

ment "the use or attempted use of physical force, or the threatened use of a deadly weapon." In 1990, the Wyoming breach of peace statute read as follows:

> (a)A person commits breach of the peace if he disturbs the peace of a community or its inhabitants by using threatening, abusive or obscene language or violent actions with knowledge or probable cause to believe he will disturb the peace.

Wyo. Stat. Ann. § 6–6–102 (Michie 1990). This Court must decide whether the "violent actions" portion of the Wyoming breach of peace statute satisfies the federal statute's requirement of "the use or attempted use of physical force." Mr. King argues that "violent actions" are not necessarily the use of physical force.

[¶ 14] The distinction between "violent actions" and "physical force" is lost on this Court. The definitions of each phrase are illustrative of their similarity. "Violent," as defined by Webster's Dictionary, means "marked by extreme force or sudden intense activity, an attack." "Actions" are "the bringing about of an alteration by force." "Physical" encompasses things "of or relating to the body," and "force" is "to do violence to." The two phrases are almost synonymous and their respective meanings are indistinguishable.

[¶ 15] *United States v. Nason*, 269 F.3d 10, (1st Cir.2001), provides a helpful discussion of the legislative history of 18 U.S.C. § 922(g)(9), which suggests Congress considered "misdemeanor crime of violence" as a subset of crimes involving "the use or attempted use of physical force involving risk of injury or harm:"

> Discussing section 922(g)(9) on the Senate floor shortly before its passage, Senator Lautenberg observed:
>
> > The revised language includes a new definition of the crimes for which the gun ban will be imposed. Under the original version, these were defined as crimes of violence against certain individuals, essentially family members. Some argued that the term crime of violence was too broad, and could be interpreted to include an act such as

cutting up a credit card with a pair of scissors. Although this concern seemed far-fetched to me, I did agree to a new definition of covered crimes that is more precise, and probably broader.

> > Under the final agreement, the ban applies to crimes that have, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon. This is an improvement over the earlier version, which did not explicitly include within the ban crimes involving an attempt to use force, or the threatened use of a weapon, if such an attempt or threat did not also involve actual physical violence.

The court also stated:

> While the remarks of the chief sponsor of a bill by no means control a court's construal of the enacted statute, they nonetheless can provide reliable insights into its construction. Here, the specificity of the comments, precisely directed toward the intended meaning of the statute's mode of aggression component, lends substantial credence to them. We conclude, therefore, that Senator Lautenberg's statements, which plainly indicate that a principal purpose underlying Congress's substitution of "crimes involving the use or attempted use of physical force" for "crimes of violence" in section 922(g)(9) was to broaden the spectrum of predicate offenses covered by the statute, are worthy of respect.

> In context, these insights are quite helpful. A comparison of the plain meanings of "crimes of violence" and "physical force" highlights the consonance between the purpose and effect of the revised language. "Violence" is essentially a subset of physical force involving injury or risk of harm. See Webster's Ninth New Collegiate Dict. (1989) (defining violence as the "exertion of physical force so as to injure or abuse"); see also 18 U.S.C. § 924(e)(2)(B)(ii) (defining "violent felony" to include crimes involving "conduct that presents a serious potential risk of physical injury to another"). The substitution of "physical force" as the operative mode of aggression element effectively expanded the coverage of section 922(g)(9) to include predicate of-

fenses whose formal statutory definitions contemplated the use of any physical force, regardless of whether that force resulted in bodily injury or risk of harm.

*Id.* at 17–19.

[¶ 16]   In *Nason*, the defendant was convicted of violating 18 U.S.C. § 922(g)(9) for possession of a firearm after pleading guilty to violation of Maine's general-purpose assault statute.[2]   On appeal, the question was whether "offensive physical contact" under Maine's general assault statute constituted the use or attempted "use of physical force" necessitated by the federal statute.   Specifically, the court stated:

> [T]he key distinction between the federal and state statutes is one of perspective: the physical force rubric employed in the federal statutes focuses on the assailant's conduct (i.e. whether the assailant directed physical force against the victim), whereas both variants of the Maine general-purpose assault statute focus on the victim's circumstances (i.e., whether the victim endured either bodily injury or an offensive physical contact). . . .

> The short of it is that both variants of assault regulated under Maine's general purpose assault statute necessarily involve the use of physical force.

*Nason*, 269 F.3d at 19–20.   The court held all convictions under the Maine statute necessarily involved, as a formal element, the use of physical force.

■   [¶ 17]   We have no difficulty concluding the "violent action" language in our breach of peace statute is included within the federal statute which prohibits those convicted of "domestic violence" from possessing firearms.   However, the language of the breach of peace statute raises another issue when it provides breach of peace can also be committed by "loud noise or music or by using threatening, abusive or obscene language" which obviously would not constitute "physical force" as contemplated by the federal statute. Recently, the United States District Court for the District of Montana held

Wyoming's battery statute, which also contains alternative grounds, too broad to qualify as a "misdemeanor crime of domestic violence."   In *United States v. Belless*, 338 F.3d 1063, (9th Cir.2003), the defendant was convicted of battery, which the statute defines as "unlawfully touches another in a rude, insolent or angry manner, or intentionally, knowingly or recklessly causes bodily injury to another."   Wyo. Stat. Ann. § 6–2–501(b) (LexisNexis 2003).   The court concluded the Wyoming statute "embraces conduct that does not include the 'use or attempted use of physical force.'"   *Belless* at 1067.   The court explained:

> Any touching constitutes "physical force" in the sense of Newtonian mechanics.   Mass is accelerated, and atoms are displaced.   Our purpose in this statutory construction exercise, though, is to assign criminal responsibility, not to do physics. As a matter of law, we hold that the physical force to which the federal statute refers is not *de minimis*.   The traditional doctrine of *noscitur a sociis*, that "the meaning of doubtful words may be determined by reference to associated words and phrases," guides us in our inquiry.   In the federal definition, the associated phrase is "threatened use of a deadly weapon." That is a gravely serious threat to apply physical force.   By contrast, the Wyoming statute criminalizes conduct that is minimally forcible, though ungentlemanly.

> . . .

> But the Wyoming law against rude touchings does not meet the requirements for the federal statute that defines the predicate offense for a felony firearm conviction: "the use or attempted use of physical force, or the threatened use of a deadly weapon.   That category does not include mere impolite behavior.   More inclusive battery statutes such as Wyoming's may be drafted to embrace conduct that too often leads to the more serious violence necessary as a predicate for the federal statute, but they are not limited to it, so

**2.**   Me.Rev.Stat. Ann. Title 17–A, § 207 provides that "a person can be guilty of misdemeanor assault in one of two ways, namely (1) if he intentionally, knowingly, or recklessly causes

bodily injury to another, or (2) if he intentionally, knowingly, or recklessly causes offensive physical contact to another."

cannot supply the necessary predicate. The phrase 'physical force' in the federal definition means the violent use of force against the body of another individual." *Id.* at 1068 (citations omitted). Having found the state statute too broad to automatically trigger the federal firearm prohibition, the court looked to the record to try to determine whether the acts perpetrated by the defendant were sufficient to meet the intent of the federal statute. The court found the record indicated Mr. Belless was charged with conduct that was a violent act and not merely a rude or insolent touching. However, because the record did not reveal the conduct to which Mr. Belless pleaded guilty and for which he was convicted, the court could not conclude Mr. Belless was guilty of conduct that served as a predicate offense.

[¶ 18] Unlike *Belless,* the record in this case does reveal the conduct to which Mr. King pleaded and for which he was convicted. Indeed, the record details Mr. King's conduct sufficiently for this Court to conclude his actions were such that they are enough to serve as an element of the predicate offense. *United States v. Smith,* 56 M.J. 711, 714 (U.S.A.F.2001) plainly states courts "may peek beneath the coverlet" to resolve any ambiguity caused by a broad state statute. Even Mr. King admits that "the charging papers, or information contain language that would indicate the crime *might* fit the prohibition of 18 U.S.C. § 922(g)."

[¶ 19] In addition, Mr. King was not charged generally under the statute. Rather, the charge against him specifically alleged "violent actions" as described in the information:

> Roger King … did disturb the peace of an inhabitant of the community by *violent actions* with reason to believe he would in fact disturb her peace, to-wit; the Defendant, Roger King, forced his way into the home of his estranged wife, Linda King, grabbed her by her arms, threw her down, threatened to hit her with a closed fist, and broke several items of personal property, in violation of Section 6–6–102(a) and (b) (emphasis added).

Clearly, the actions described in the charging document involved "the use, or attempted use of physical force" as required by the federal statute. The record also shows that Mr. King pleaded guilty to those charges voluntarily and intelligently and the court found that an adequate factual basis for the guilty plea existed. DCI points out, and we agree, that although the record does not contain a transcript of the hearing where the factual basis for the plea was offered, a reasonable conclusion can be drawn that it duplicated the allegations contained in the charging document because the judgment and sentence states that Mr. King entered the plea "according to the Information." Nothing in the record indicates otherwise. Mr. King was charged with and pled guilty to a misdemeanor crime of domestic violence that involved an element of physical force.

### The Relationship Element

[¶ 20] Mr. King also argues the predicate crime must have as an element that it was committed against a household member, which § 6–6–102 does not. Case law abounds establishing that 18 U.S.C. § 922(g)(9) does not require the predicate offense to contain as an element the relationship between the defendant and the victim. *See United States v. Shelton,* 325 F.3d 553, (5th Cir.2003); *United States v. Thomson,* 134 F.Supp.2d 1227, 2001 U.S. Dist. LEXIS 8627 (C.D.Utah); *United States v. Kavoukian,* 315 F.3d 139, (2nd Cir.2002); *Smith,* 171 F.3d at 620; *United States v. Barnes,* 295 F.3d 1354 (D.C.Cir.2002); and *United States v. Denis,* 297 F.3d 25, 30–31 (1st Cir.2002).

[¶ 21] The Lautenberg Amendment was enacted to prevent domestic offenders convicted of misdemeanors from possessing firearms. *United States v. Blosser,* 2002 WL 31261170, 2002 U.S. Dist. LEXIS 19339 (D.Kan.2002). The purpose of the law would be thwarted if the only crimes actionable were those titled "domestic" and containing an element of a domestic relationship. *Id.* An entire segment of offenders, which were specifically targeted by this legislation, would fall through the cracks. *Id.*

[¶ 22] *United States v. Meade,* 986 F.Supp. 66, 68 (D.Mass.1997), contains one of the better discussions of 18 U.S.C. § 921(a)(33)(A), the section that defines "mis-

demeanor crime of domestic violence." In *Meade,* the court considered whether the language of section 921(a)(33)(A) requires the predicate offense contain as elements the use of physical force *and* also that the force be committed by a person having a domestic relationship with the victim. The court stated:

> The crux of the matter is whether the phrase "as an element" modifies both requirements or just the use of force requirement. The inclusion of both the use of force and domestic relationship requirements in one sentence does not mandate that they be treated as one element. In drafting the statute Congress placed the singular word, "element," immediately before the use of force requirement. In choosing the singular word "element," Congress intended to modify only the language immediately following the phrase. If Congress had intended that both requirements be mandatory elements of the underlying state statute, the word "element" would have been in the plural to encompass both requirements. Reading the phrase "has, as an element" in its ordinary plain meaning, it is clear the singular element modifies only the use of force requirement.

*Barnes,* 295 F.3d at 1362–1363. Contrary to Mr. King's argument, 18 U.S.C. § 922(g)(9) does not require that § 6–6–102 have, as an element, that the physical force be perpetrated upon a household member.

### Delays in Issuance of the Denial of Permit

■ [¶ 23] Mr. King contends that the length of the delay in denying his application warrants reversal. DCI issued its initial denial five months after the application was submitted, rather than sixty days as required by statute, and issued the final denial thirty-nine days after Mr. King's request for reconsideration, rather than the statutory twenty days. Mr. King cites to § 6–3–114(D) in support of his timeliness argument. This statute does not exist. Section § 6–8–104(m) seems to match the statute Mr. King discussed in his brief.[3]

■ [¶ 24] The response periods in § 6–8–104(m)(ii) are merely directory and not mandatory. *Griess v. Office of the Attorney General, Division of Criminal Investigation,* 932 P.2d 734, 740 (Wyo.1997). The statute does not provide that time is of the essence and contains no language that would negate the exercise of authority after the prescribed time period. *Id.* In *Griess,* there was a delay in the issuance of the final denial letter after a request for reconsideration was presented to DCI.[4] The record, however, contained "no evidence serving to demonstrate that the delay in rendering the decision on Mr. Griess' request for reconsideration prejudiced either his personal rights or any public interest." *Id.* Like *Griess,* the record in this case lacks a showing of prejudice to Mr. King's personal rights or the public's interest. Thus, the delay experienced by Mr. King does not justify reversing the denial of his application.

### Due Process

■ [¶ 25] In Mr. King's final argument, he contends DCI's action violated his due process rights because he was not provided notice and an opportunity to be heard prior to the denial of his permit application. He contends he has a fundamental right to own a firearm, guaranteed in part by article 1, sec-

---

**3.** W.S. § 6–8–104(m) states:

> The division shall, within sixty (60) days after the date of receipt of the items listed in subsection (e) of this section, either: (i) Issue the permit; or (ii) Deny the application based on the ground that the applicant fails to qualify under the criteria listed in this section or upon reasonable grounds for denial specified under subsection (g) of this section. If the division denies the application, it shall notify the applicant in writing, stating the grounds for denial and informing the applicant of a right to submit, within thirty (30) days, any additional documentation relating to the grounds of deni-

al. Upon receiving any additional documentation, the division shall reconsider its decision and inform the applicant within twenty (20) days of the result of the reconsideration. The applicant shall further be informed of the right to seek review of the denial in the district court pursuant to the Wyoming Administrative Procedure Act. No person who is denied a permit under this section shall carry a concealed firearm under a permit issued in another state, so long as he remains a resident of this state, and he remains ineligible for a permit in this state.

**4.** The exact delay is unspecified.

tion 4 of the Wyoming Constitution, and that he was, therefore, entitled to a hearing.

[¶ 26] The United States and Wyoming constitutions each provide that no person shall be deprived of life, liberty or property without due process of law. *Welch v. Welch*, 2003 WY 168, ¶ 9, 81 P.3d 937, ¶ 9 (Wyo.2003) (quoting XIV, § 1; Wyo. Const. art. 1, § 6). It is basic that before a property interest can be terminated, except in emergency situations, due process must be afforded to litigants in the form of notice and a meaningful opportunity to be heard. *Id.* This Court has reiterated that sentiment:

> Wyo. Const. art. 1, § 6, provides that "no person shall be deprived of life, liberty or property without due process of law." The similar provision found in the Fifth Amendment to the United States Constitution was made applicable to the states by the Fourteenth Amendment. "Notice and the opportunity to be heard are touch stones of this due process of law." The notice and hearing opportunity must be "appropriate to the nature of the case," and the opportunity to be heard must be "at a meaningful time and in a meaningful manner." The party claiming an infringement of his right to due process has the burden of demonstrating both that he has a protected interest and that such interest has been affected in an impermissible way. The question is whether there has been a denial of fundamental fairness.

*DH v. Department of Family Services (In re "H" Children)*, 2003 WY 155, ¶ 38, 79 P.3d 997, ¶ 38 (Wyo.2003) (citations omitted).

[¶ 27] However, Mr. King wrongly assumes he has a protected property interest in obtaining a concealed weapon permit. Although both the federal and Wyoming constitutions guarantee citizens the right to bear arms, that right does not translate into the right to carry a concealed weapon.[5] This Court has addressed the distinc-

tion between a right to bear arms and a right to carry a concealed weapon under the Wyoming constitution. In *Mecikalski v. Office of the Attorney General*, 2 P.3d 1039, (Wyo. 2000), we explained that distinction:

> The Constitution of the United States does not grant a right to bear arms: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear arms, shall not be infringed." U.S. Const. amend. II. The United States Supreme Court has construed the Second Amendment (in conjunction with the Tenth Amendment) as not affecting the right of a citizen to bear arms. It means no more than that the right may not be infringed by Congress and constrains the federal government but not the several states. *U.S. v. Cruikshank*, 92 U.S. 542, 553, 23 L.Ed. 588 (1875); *Presser v. Illinois*, 116 U.S. 252, 265, 6 S.Ct. 580, 29 L.Ed. 615 (1886). Wyoming has a parallel constitutional provision: "The right of citizens to bear arms in defense of themselves and of the state shall not be denied." Wyo. Const. art. 1, § 24. However, contemporaneously with adoption of the Wyoming Constitution, the legislature enacted this statute: "Every person, not being a traveler, who shall wear or carry any dirk, pistol, bowie-knife, dagger, sword-in-cane or any other dangerous or deadly weapon concealed, or who shall carry or wear any such weapon openly, with the intent or avowed purpose of injuring his fellow-man, shall be fined in any sum not exceeding one hundred dollars." 1890 Wyo. Territorial Sess. Laws, Ch. 73 § 96 (11th Legislative Assembly). The statute prohibiting the carrying of concealed weapons has undergone many revisions over the years, and we shall set out the details of the current version of that statute in a later section of this opinion. We also note at this juncture that we

---

5. The United States Supreme Court in *United States v. Miller*, 307 U.S. 174, 178, 83 L.Ed. 1206, 59 S.Ct. 816 (1939) held the Second Amendment does not confer an absolute *individual* right to bear arms, but a "collective right", of states to arm their militias., Since *Miller*, "the lower federal courts have uniformly held that the Second Amendment preserves a collective, rather than individual, right." *Love v. Pepersack*, 47 F.3d 120, 124 (4th Cir. 1995); *Hickman v. Block*, 81 F.3d 98 (9th Cir. 1996); *United States v.*

*Wright*, 117 F.3d 1265 (11th Cir.1997), vacated in part on other grounds, 133 F.3d 1412 (11th Cir.1998). Recently, in *United States v. Emerson*, 270 F.3d 203 (5th Cir. 2001), cert. denied, the 5th Circuit Court of Appeals concluded that the Second Amendment does confer an individual right to bear arms, apart from any connection to a state-run militia. However, as the 10th Circuit noted in *United States v. Parker*, 362 F.3d 1279 (10th Cir. 2004), that court stands alone among the federal circuit courts in its conclusion.

have held that a statute prohibiting the carrying of concealed weapons is constitutional under Wyoming's right to bear arms provision. *State v. McAdams*, 714 P.2d 1236 (Wyo.1986).

*Id.* at 1040–1041. Much like a driver's license, a permit to carry a concealed weapon is a "privilege" and not a "right." *Id.* Just as one may not drive an automobile without a license, one may not carry a concealed weapon without a permit. *Id.*

[¶ 28] Having concluded that no constitutional right to a hearing existed in this circumstance, we look to the statutes to determine whether the proper procedures were followed concerning notice and opportunity to contest DCI's action. Neither the concealed weapon statute nor the Administrative Procedures Act contains any requirement for a hearing. Under the concealed weapon permit statute, an aggrieved applicant is given the opportunity to rebut DCI's findings and conclusions through a request for reconsideration of the denial of a permit. Mr. King took advantage of that opportunity, albeit without success. The Administrative Procedures Act requires a hearing only when the case is considered contested. Wyo. Stat. Ann. § 16–3–107 (LexisNexis 2003). This Court has previously construed the meaning of a "contested case" to be where legal rights exist which, under the law, are to be determined after an opportunity for a trial-type hearing. *Id.* Mr. King failed to identify any legal right which required such a hearing. Mr. King received adequate notice of the decision and had the opportunity to seek reconsideration as provided by statute. We hold DCI's rejection of Mr. King's application for a concealed weapon permit did not result in a denial of his right to due process.

[¶ 29] Affirmed.